# 25-1760-cv

# United States Court of Appeals

*for the*

# Second Circuit

———————————————

PAULETTE T. GLOVER, on behalf of themselves and all others similarly situated, JOHN T. WAREHIME, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

– v. –

CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,

*Defendants-Appellees,*

– v. –

VIDA LONGEVITY FUND LP, (No. 19-cv-06004-ALD-DCF (S.D.N.Y.)), TVPX ARS INC., as securities intermediary for Consolidated Wealth Management, Ltd., et al., (No. 2:18-cv-02989-RBS (E.D.Pa.)), TIM ROBERTS, FIFTH SEASON OPERATING LP, FS OPERATING OF HOLDINGS LP, NOLOR CAPITAL LP, RICHARD SINGH, JUDY SINGH, JONATHAN SWERDLOW, RUTHIE WHITE, JOHN HARKINS, LIFE RECOVERY FUND LLC, JEAN HECKMAN, DOLORES AYLESWORTH,

*Objectors-Appellants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## PLAINTIFFS-APPELLEES' RESPONSE BRIEF

NORMAN E. SIEGEL
LINDSAY TODD PERKINS
ETHAN M. LANGE
STUEVE SIEGEL HANSON LLP
Kansas City, MO
460 Nichols Road, Ste. 200
(816) 714-7100

JOHN J. SCHIRGER
JOSEPH FEIERABEND
SCHIRGER FEIERABEND LLC
6811 Shawnee Mission Pkwy, Ste. 312
Overland Park, KS 66202
(816) 561-6500

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ..............................................................................................1

JURISDICTIONAL STATEMENT ...................................................................3

STATEMENT OF ISSUES ................................................................................3

STATEMENT OF THE CASE ...........................................................................4

I.     Susman Copies Glover's 2016 Case...............................................4

II.    Glover Obtains Substantial Discovery and Survives a Challenge to Her Legal Theories. ...........................................................................7

III.   With the Assistance of a Mediator, the Parties Reach a Settlement. ............11

IV.   After Two Hearings and a Thorough Evaluation of Objectors' Arguments, the District Court Rejects Them and Approves the Settlement. ...................14

     A.     The court grants preliminary approval................................................14

     B.     The court denies Susman's demand for broad discovery, finding its allegations of collusion unsupported and implausible. .......................19

     C.     The Settlement is well-received by the Class, with Susman's clients submitting the only substantive objections. .......................................20

     D.     The court grants final approval. .........................................................21

SUMMARY OF THE ARGUMENT ........................................................................27

STANDARD OF REVIEW ...............................................................................30

ARGUMENT ...................................................................................................30

I.     The District Court Correctly Concluded Plaintiffs Have Class Standing. ....31

II.    The District Court Correctly Found the Certification Requirements Satisfied. ............................................................................................37

     A.     The district court correctly found typicality satisfied. .......................37

i

B. The district court correctly found predominance satisfied..................40

C. The district court correctly found adequacy-of-representation satisfied.................................................................................47

    1. There was no divergence of interests.......................................47

    2. Objectors' accusation of collusion is groundless.....................53

    3. The district court correctly found the distribution plan equitable. .................................................................................55

    4. The district court correctly found Warehime adequate. ...........58

    5. The court correctly rejected Objectors' argument that the service awards were conditional. .............................................59

CONCLUSION.................................................................................................61

CERTIFICATE OF COMPLIANCE...................................................................63

CERTIFICATE OF SERVICE ..........................................................................64

ii

## TABLE OF AUTHORITIES

**Cases**

*Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*,
93 F.4th 1315 (11th Cir. 2024)..................................................................10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................... 42, 45

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................................................................... 28, 44

*Bally v. State Farm Life Ins. Co.*,
536 F. Supp. 3d 495 (N.D. Cal. 2021)....................................................10

*Barrows v. Becerra*,
24 F.4th 116 (2d Cir. 2022)....................................................................30

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........................................................ 13, 51

*Heit v. Van Ochten*,
126 F. Supp. 2d 487 (W.D. Mich. 2001)................................................58

*Hyland v. Navient Corp.*,
48 F.4th 110 (2d Cir. 2022)....................................................................30

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ........................................... 28, 42, 43, 45

*In re APA Assessment Fee Litig.*,
311 F.R.D. 8 (D.D.C. 2015) ..................................................................57

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021)..............................................................49

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) ........................................................... 38, 48

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)..................................................................44

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018)................................................................56

*In re Linerboard Antitrust Litig.*,
305 F.3d 145 (3d Cir. 2002) ......................................................................46

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) ............................................................ *passim*

*In re Mexico Money Transfer Litig.*,
267 F.3d 743 (7th Cir. 2001) .....................................................................46

*In re Nigeria Charter Flights Cont. Litig.*,
233 F.R.D. 297 (E.D.N.Y. 2006).............................................................42

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020).............................................................48

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ......................................................................44

*Jaffe v. Morgan Stanley & Co.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008).............................................58

*Karr v. Kansas City Life Ins. Co.*,
702 S.W.3d 1 (Mo. Ct. App. 2024) .................................... 10, 16, 18, 23

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
897 F.3d 88 (2d Cir. 2018) ................................................................ 34, 37

*Larson v. AT & T Mobility LLC*,
687 F.3d 109 (3d Cir. 2012) ......................................................................59

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
323 F.R.D. 145 (S.D.N.Y. 2017)...................................................... 33, 36

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) ................................................................ 37, 38

*Maree v. Castanares*,
2025 WL 2268254 (9th Cir. Aug. 8, 2025)..............................................59

iv

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016) ...................................................................... *passim*

*Meek v. Kansas City Life Ins. Co.*,
  126 F.4th 577 (8th Cir. 2025) ..................................................................... 9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ...................................................................... *passim*

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  523 F.3d 1091 (9th Cir. 2008) .................................................................... 54

*Norem v. Lincoln Benefit Life Co.*,
  737 F.3d 1145 (7th Cir. 2013) .................................................................... 8

*Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of Am., NA*,
  2014 WL 2086426 (S.D.N.Y. May 5, 2014) ................................................ 34

*Radcliffe v. Experian Info. Sols. Inc.*,
  715 F.3d 1157 (9th Cir. 2013) .................................................................... 59

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon*,
  775 F.3d 154 (2d Cir. 2014) ...................................................................... 14, 15, 33

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .................................................................. 55

*Saylor v. Lindsley*,
  456 F.2d 896 (2d Cir. 1972) ...................................................................... 22, 44

*Scott v. Chipotle Mexican Grill, Inc.*,
  954 F.3d 502 (2d Cir. 2020) ...................................................................... 30, 35

*Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*,
  853 F. App'x 451 (11th Cir. 2021) .............................................................. 10

*SM Kids, LLC v. Google LLC*,
  963 F.3d 206 (2d Cir. 2020) ...................................................................... 35

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...................................................................... *passim*

v

*Sullivan v. UBS AG*,
  149 F.4th 206 (2d Cir. 2025) ............................................................ 32, 34

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ...............................................................................41

*Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*,
  2024 WL 1349221 (S.D.N.Y. Mar. 29, 2024)................................... 12, 13

*Vogt v. State Farm Life Ins. Co.*,
  963 F.3d 753 (8th Cir. 2020) ..............................................................9, 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .............................................. 46, 49, 50, 52

*Wayside Church v. Van Buren Cnty.*,
  2025 WL 2829601 (6th Cir. Oct. 6, 2025) ...................................... 54, 55, 57

*Zeno v. Ford Motor Co.*,
  238 F.R.D. 173 (W.D. Pa. 2006) .........................................................42

**Rules**

Fed. R. Civ. P. 23 ............................................................... *passim*

**Other Authorities**

Newberg on Class Actions, § 3:26 (4th ed. 2002)....................................47

vi

## <u>INTRODUCTION</u>

In 2016, Plaintiff Glover filed this case, which Susman Godfrey LLP copied in three cases filed in 2018 and 2019. Because the claims are the same and the classes overlap, the Settlement includes the members of Susman's classes and releases the claims of those who chose not to opt out. Susman is disappointed, and asserted objections on behalf of fourteen clients ("Objectors"). The district court thoroughly reviewed and rejected their objections, making numerous findings which Objectors simply ignore with their appeal. This is insufficient to show an abuse of discretion by the district court in certifying the Class for entry of judgment on the Settlement.

The Settlement is impressive: $147.5 million in cash, no claims process, and no possibility of any money reverting to Defendants. The average gross recovery is $770. This result compares favorably to the real risk that Class Members would win nothing. Class Counsel—highly experienced in litigating these types of cases for more than a decade—attested to that risk below, pointing to both similar cases that produced *no* recovery and others that produced significant nine-figure settlements like the one here. Class Counsel's experience runs the gamut of outcomes, including multiple class-wide jury verdicts affirmed on appeal. But several courts—including the Eleventh Circuit in a case recently litigated by Susman—have rejected the underlying legal theory, with policyowners receiving nothing.

1

Given the uncertainty of the outcome and high value of the Settlement, Objectors have abandoned their challenges to the fairness, reasonableness, and adequacy of the Settlement. Instead, the case now comes to this Court only on Objectors' procedural challenges to class certification. But Objectors' challenge to class certification below was cursory, failing to distinguish among the Rule 23(a) and (b) requirements. Objectors did not even cite their key case on appeal—*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016)—even while now claiming the district court abused its discretion by failing to follow it. Regardless, *Mazzei's* predominance discussion for a case litigated through trial is inapposite. It is well settled that the predominance analysis changes when certification is sought for settlement because manageability concerns are eliminated.

The district court acted well within its discretion in finding the class certification requirements satisfied. Plaintiffs and all Class Members have materially identical insurance policies as it relates to the at-issue "cost of insurance" ("COI") provision, and the challenged conduct of Defendant The Lincoln National Life Insurance Company ("Lincoln") was uniform as to all Class Members.

The court correctly refused to resolve the merits of whether Glover, and Class Members like her with a policy not originally issued by Lincoln, would have been able to prove they were in contractual privity with Lincoln. As the district court found, because the answer to that merits question did not defeat the class certification

2

requirements, it would have been improper for the court to resolve it as part of the certification analysis. Objectors' appeal, which hinges almost entirely on their challenge to the merits of Plaintiffs' case and prideful assertion—also rejected by the district court—that Susman would have done better (despite obtaining adverse rulings in its own cases), should be rejected. The Court should affirm certification of the Class for settlement.

## JURISDICTIONAL STATEMENT

Plaintiffs agree this Court has jurisdiction over Objectors' appeal. The district court also had jurisdiction to approve the Settlement. Plaintiffs have standing to pursue their claims (which no one disputes), and, as explained below, class standing to pursue the claims of the Class Members.

## STATEMENT OF ISSUES

1.      Whether the district court correctly concluded—under *NECA's* same conduct, same concerns framework—that Plaintiffs have class standing because the same alleged misconduct by Lincoln that injured Plaintiffs likewise injured all Class Members.

2.      Whether the district court acted within its broad discretion in certifying the Class for settlement where the court found that Lincoln determined COI rates in the same allegedly improper manner for the materially identical policies, making

3

Plaintiffs' claims challenging Lincoln's conduct typical of the Class and the common questions of policy interpretation and breach predominant.

3.  Whether the district court acted within its broad discretion in finding no conflict within the Class where all Class Members seek the same compensatory relief for the same alleged overcharges caused by Lincoln's uniform conduct.

## STATEMENT OF THE CASE

### I.  Susman Copies Glover's 2016 Case.

Objectors appeal the decision of the Honorable Michael P. Shea, Chief Judge of the United States District Court for the District of Connecticut, certifying a class for the entry of judgment on a class action settlement.

Glover filed this case in 2016. A-43. Glover alleged Lincoln, as the administrator of her universal life insurance policy, had been surreptitiously taking improperly inflated monthly deductions for the COI from her policy's savings account for nearly two decades. A-43-58 (¶¶7, 27, 33-34, 39-41). Though Glover's policy was originally issued by Defendant Connecticut General Life Insurance Company, Glover alleged Lincoln had purchased Connecticut General's life insurance business, including Glover's policy, in 1998. A-45 (¶¶7, 11).

Glover's policy promises that the COI rates will be determined based on "expectations as to future mortality experience," but Glover alleged the Defendants had violated this provision and converted her money by using COI rates inflated with

4

unlisted, non-mortality factors and failing to lower the COI rates as expected mortality improved. A-48-49, A-53-56 (¶¶28-29, 33-36, 51-75). Glover pled her claims on behalf of a class of owners of policies issued or administered by Lincoln or Connecticut General with the same COI rates language and other specified policy characteristics. A-51 (¶42).

In 2018 and 2019, Susman, on behalf of three plaintiffs—TVPX ARS Inc., Thomas Iwanski, and Vida Longevity Fund, LP—all with Lincoln-administered policies containing the same COI promises, filed three cases making the same allegations against Lincoln or Lincoln-affiliates First Penn-Pacific Life Insurance Company ("FPP") and Lincoln Life and Annuity Company of New York ("LLANY"). Their complaints copied Glover's putative class nearly verbatim in describing the included policies. A-875.

Recognizing the overlap in facts and claims, the judge presiding over the cases against Lincoln (by TVPX and Vida) and FPP (by Iwanski) in the Eastern District of Pennsylvania ordered discovery to be coordinated in all four cases—the two in that court, Vida's other case against LLANY in the Southern District of New York, and this case. *Iwanski*, No. 18-cv-01573-RBS, Doc. 67. In *Vida*, the parties acknowledged that the documents, Lincoln witnesses, and expert reports in all three Susman cases were substantially the same. No. 19-cv-06004-ALC, Doc. 43 at 1-2. Indeed, because the claims and proof were the same, Susman moved to certify a

5

combined class of owners of policies issued by either Lincoln or FPP in those functionally consolidated cases. *Iwanski*, Doc. 156-1; CA-326; CA-334.

For all policies in Glover's and Susman's classes, Lincoln was the administrator, performing the tasks related to the challenged COI charges, including evaluating mortality expectations, assessing the COI rates, calculating COI charges, and deducting the COI charges from policyowners' accounts. A-978-80 (¶¶8-14); A-1286 (91:7-9). During discovery in Susman's cases, an employee of Lincoln served as the Rule 30(b)(6) witness for Lincoln, FPP, and LLANY. CA-6, ¶19; A-977. Policyowners dealt with Lincoln on issues related to their policies, including as to policy-related correspondence, billing, and premium payments. A-978 (¶8). In contrast, FPP and LLANY have no or only a few employees and therefore could not perform policy-administration tasks, including related to COI-assessment. A-978 (¶¶6-7). In all three cases, Susman relied on evidence of Lincoln's conduct in attempting to prove the claims. *E.g.*, CA-4 (¶¶12-16).

Susman's cases were different from this one in two notable respects, both of which made them narrower. First, the plaintiffs expressly limited their claims to overcharges within the nominal statute of limitations (without alleging any tolling doctrine), necessarily conceding decades of damages. *See Iwanski*, Doc. 156; *Vida*, Doc. 76. By contrast, Glover pursued recovery of all overcharges, alleging the limitations period was tolled by fraudulent concealment. A-50. And because Glover

6

filed this case years earlier than Susman's cases, her claims extended further back even without tolling.

Second, while Glover alleged the COI rates were improperly inflated all along, and in addition, that they should have been lowered over time to reflect improved expected mortality, Susman ultimately only pursued the latter claim. *E.g.*, *TVPX*, No. 18-CV-02989-RBS (E.D. Pa.), Doc. 168-1 at ECF-p.11; *Iwanski*, Doc. 156-1 at ECF-p.11; *Vida*, Doc. 77 at ECF-pp.8-9.

Thus, while Susman copied Glover's class definition, it sought a truncated version of the relief Glover sought, and its classes include less than half of the policies in Glover's Class.

## II. Glover Obtains Substantial Discovery and Survives a Challenge to Her Legal Theories.

Before Susman had even filed its copycat cases, the parties here commenced discovery. Over the course of several productions, Lincoln produced over 13,000 pages of documents. A-92; A-732. Connecticut General produced only a few hundred pages of documents. A-732. As its counsel later acknowledged, Connecticut General had few relevant documents because it had sold the book of business of which Glover's policy was a part to Lincoln decades ago. A-1265 (70:22-71:5); A-1283 (88:19-20) (court recognizing that "Connecticut General's not really even in the picture anymore").

In November 2016, Defendants each moved for judgment on the pleadings. A-101-46; A-15 (Doc. 74). Relying on the Seventh Circuit's opinion in *Norem v. Lincoln Benefit Life Co.*, 737 F.3d 1145 (7th Cir. 2013), Defendants argued that the policy language unambiguously permitted the use of unlisted, non-mortality factors in determining COI rates. A-125-34. Lincoln also separately challenged Glover's contract claims on the basis that Glover was not in privity with Lincoln. A-134-39. In response, Glover argued her interpretation of the policy was reasonable, citing cases that declined to follow *Norem*, and that she had sufficiently alleged Lincoln was contractually liable to her. A-16 (Doc. 80 at ECF-pp.21-35); A-155 (Lincoln correspondence referring to Glover's policy as a "Lincoln National Life Insurance Company Policy"); A-156 (Lincoln correspondence identifying "The Lincoln National Life Insurance Company" as the "Issuing Company").

Defendants' motions went undecided by the previously assigned judge for nearly three years. During that time, and pending resolution of a discovery dispute and related requested adjustments to the case schedule, the court entered a discovery stay. A-18 (Doc. 109). But, before the case was stayed, Glover had obtained the vast majority of the discovery she needed to move for class certification. A-188-89 (7:14-8:25).

On January 11, 2019, the court informed the parties it intended to grant Defendants' motions pursuant to the reasoning of *Norem*. A-256. The court

8

dismissed Glover's conversion claim for the same reasons and further concluded that a contract claim would preclude a conversion claim. A-257. The court stated, however, that under *Norem*, the policy required expected mortality to be at least the main determinant of the COI rates and provided Glover the opportunity to seek leave to amend her complaint. A-257-58. The court did not address Lincoln's lack-of-privity argument.

On February 26, 2019, Glover moved for leave to amend. A-22 (Docs. 150-1, 151). Relying on discovery Glover obtained from Lincoln showing how the COI rates were determined and implemented, Glover alleged that expected mortality was not the main determinant of the COI rates, but rather, unlisted, non-mortality factors like profit and expense recovery were. A-270-74; A-286-88. Glover also alleged the COI rates should have been lowered because expected mortality had improved. A-274-76. Glover also asserted the excessive deductions were conversions of her property. A-22 (Doc. 150-1 at ECF-pp.35-36).

Glover's motion went undecided for over four years. During this period, Class Counsel obtained several favorable rulings in similar cases against other insurers, including four jury verdicts in favor of policyowner classes between 2018 and 2023 (A-728-31), with class certification and summary judgment in favor of policyowners affirmed on appeal in both federal and state courts. *See, e.g.*, *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753 (8th Cir. 2020); *Meek v. Kansas City Life Ins. Co.*, 126 F.4th

9

577 (8th Cir. 2025); *Karr v. Kansas City Life Ins. Co.*, 702 S.W.3d 1 (Mo. Ct. App. 2024). Class Counsel also obtained several hundred million dollars in settlements for policyowner-classes during this time. A-731-32; A-1062-66.

But not all outcomes were favorable. Some courts reached the same conclusion as *Norem* and found that similar policy language gave the insurer discretion to leave COI rates unchanged despite expecting improved mortality. *E.g.*, *Slam Dunk I, LLC v. Conn. Gen. Life Ins. Co.*, 853 F. App'x 451 (11th Cir. 2021); *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495 (N.D. Cal. 2021); *see also* A-729-30. Susman itself suffered such an adverse ruling by the Eleventh Circuit, which rejected its interpretation of similar language and affirmed dismissal of its client's claims. *See Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315 (11th Cir. 2024).

On September 25, 2023, following reassignment of the case to Chief Judge Shea, the court granted Glover's motion to amend, finding Glover's allegations plausibly showed that Defendants had not used expected mortality as the main determinant of the COI rates, including by failing to lower rates when expected mortality improved. A-278-90; A-292-94. The court also found that Glover had plausibly alleged privity with Lincoln. A-295-96. The court denied Glover leave to re-plead the previously dismissed conversion claim. A-295. The court further found Glover had plausibly alleged the statute of limitations was tolled by concealment,

and that each monthly COI deduction was a separate breach such that claims for deductions occurring within the six-year limitations period were timely without tolling. A-282-83.

Glover filed her amended complaint on October 10, 2023. A-298-319; A-25 (Docs. 191-204). Thereafter, the court set deadlines for bifurcated discovery on privity and the statute of limitations. A-26-27 (Doc. 218).

## III.  With the Assistance of a Mediator, the Parties Reach a Settlement.

The ruling on the motion to amend, and lifting the stay, reinvigorated the case. With that ruling, along with Class Counsel's favorable rulings, jury trials, and settlements in similar cases, the parties began to explore settlement, including through mediation with the assistance of the Honorable Jose Linares (Ret.). A-735-36. As part of the negotiations, Lincoln produced robust policyowner data that allowed Class Counsel to evaluate damages and the equitable allocation of settlement funds. A-736. Ultimately, the parties reached an agreement for a $147.5 million non-reversionary cash settlement. A-736-38. This is the largest cash settlement paid by Lincoln in a class action. It is also one of the largest class settlements in this type of COI litigation, not only in the aggregate, but on a per-policy recovery. A-1277 (82:16-17); A-1387-88.

On March 8, 2024, Plaintiffs moved for preliminary approval of the Settlement. A-628-82. At the same time, Plaintiffs filed a Third Amended Complaint

11

that added John Warehime, a Lincoln-issued policyowner, as a Plaintiff. A-606. The definition of the Class for settlement remained the same as that pled in Glover's original complaint, except for a slight narrowing to include only policyowners who had an active policy within six years from commencement of the suit. A-620.

At the time of the Settlement, there were no merits rulings or trials set in Susman's cases. A class certification motion was pending in the two cases against Lincoln and FPP. In the case against LLANY (*Vida*), the court had certified a class of fewer than 800 policyowners but no merits rulings had been issued, and no trial was set. Shortly after the motion for preliminary approval was filed, however, the *Vida* court issued a summary judgment ruling interpreting the policies the same way as the district court here, requiring that mortality be only the "main ingredient" in the COI rates. *Vida*, 2024 WL 1349221, at *5 (S.D.N.Y. Mar. 29, 2024); SPA-13-14. Susman had not argued for that interpretation. Susman argued LLANY was required to lower the COI rates anytime expected mortality improved and called the "main ingredient" interpretation later adopted by that court "newly-invented, and flawed." *Vida*, Doc. 153 at ECF-pp.7, 9.

Because Susman had limited the case to overcharges within the statute of limitations, Lincoln's expert opined that the ruling eliminated nearly all damages because the COI rates during that period were comprised of mostly mortality in nearly every instance. A-1184-87. The district court found those calculations were

12

consistent with its own ruling. SPA-83. If not for the Settlement, LLANY would have moved to exclude Vida's experts' damages calculations as inconsistent with that court's interpretation of the policies. A-2567 (85:10-20); SPA-82. The *Vida* class members, thus, stood on the edge of a potential adverse judgment.

Indeed, the *Vida* court granted summary judgment against twenty-two class members (who are also Class Members here) "for whom a death claim was paid but no monthly premiums were paid during the limitations period," including the class member asserting more than 25% of the *Vida* class's total claimed damages. 2024 WL 1349221, at *6; A-865. The *Vida* court later stayed the case pending completion of the settlement approval proceedings here. *Vida*, Doc. 252.

Despite these adverse rulings, on March 29, 2024, the Susman plaintiffs filed an opposition to Plaintiffs' motion for preliminary approval. A-30 (Doc. 255). They primarily argued the Settlement was not fair, reasonable, and adequate under the factors in Rule 23(e)(2) and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), claiming they had obtained more discovery in their cases, that their cases were more advanced and on stronger footing, and that the $147.5 million Settlement was insufficient. They accused Class Counsel and Plaintiffs of colluding with Lincoln and sought discovery into the parties' settlement negotiations. They also argued Glover lacked class standing to pursue the claims of policyowners with policies originally issued by Lincoln, FPP, or LLANY because Connecticut General

13

issued her policy. They did not challenge Warehime's class standing, but opposed his addition as a Plaintiff. Of their 40-page opposition brief, they devoted less than two pages to challenging class certification. A-30 (Doc. 255 at ECF-pp.45-46).

**IV. After Two Hearings and a Thorough Evaluation of Objectors' Arguments, the District Court Rejects Them and Approves the Settlement.**

**A. The court grants preliminary approval.**

After extensive briefing and a lengthy hearing, on September 4, 2024, the court preliminarily approved the Settlement. A-1196-1319; SPA-1-29. The court rejected Susman's challenge to class standing. First, the court found good cause to permit adding Warehime as a Plaintiff because doing so would "facilitate resolution of this action through class settlement and thereby spare the parties time and expense." SPA-4. Then, relying on this Court's class standing test in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) and *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 163 (2d Cir. 2014), the court concluded Plaintiffs had class standing to represent all Class Members. "[L]ike Glover's and Warehime's policies—the policies of all members of the proposed class are administered by Lincoln National," which performed all the tasks related to the challenged COI determinations and deductions. SPA-4-7. Thus, Plaintiffs "and all class members have been 'injured' by Lincoln National's administration of

the policies." SPA-7. The court found that the evidence Susman had developed in its cases showed the same. SPA-7 n.1.

Second, the court rejected Susman's cursory challenge to class certification. The court found that the "numerosity, commonality, predominance, superiority, and ascertainability requirements are easily met in this case," further noting that "Objectors do not contest the settlement on any of these grounds." SPA-10. The court found that the policies contain materially identical COI rates provisions and that "the question of whether the defendants have complied with that language" is common and predominates. *Id.*

Addressing Rule 23(a)'s typicality and adequacy requirements, the court first noted that "[n]o one disputes that the plaintiffs' attorneys are qualified, nor could they," where they had litigated several similar cases and "achieved several large settlements" and "also tried four such cases to verdicts in the classes' favor." SPA-11-12 (citations omitted).

The court further rejected Susman's argument that the "limited discovery in this case" defeated typicality or adequacy. SPA-12. Rather, "[t]he parties have commenced discovery in this case" and the "documents the Objectors have relied on" to demonstrate their allegedly superior discovery record are, in fact, "the same documents the plaintiffs [obtained in this case and] have used here." SPA-12; *see* CA-93-95 (¶¶30-33). Recognizing that only a "fundamental" conflict of interest will

15

defeat certification, SPA-11, the court concluded that "the fact the named plaintiffs have conducted less discovery does not constitute a 'fundamental conflict' with those members of the class who are part of" Susman's cases. SPA-12.

The court also rejected Susman's argument that Plaintiffs' "claims are on weaker footing" due to the statute of limitations. SPA-12. First, the court found that even though "some of the claims in this case depend on tolling," "the core claim here about the key policy language faces the same challenges that the similar claims in those other three cases face." SPA-13. The court also noted that in *Vida*, for example, the court had reached the same interpretation of the policy. *Id.* Thus, plaintiffs in all cases "are in the same boat" in facing the obstacle of proving that mortality expectations were not the main ingredient in the COI rates in recent policy years. SPA-14.

Moreover, Plaintiffs sought damages for overcharges both within and outside the nominal limitations period. Class Counsel had successfully recovered such damages in other, similar cases.[1] Conversely, Susman abandoned overcharges in earlier periods. That didn't defeat typicality or adequacy because "Glover and Warehime share [the same interest] with all class members in prevailing on the same core argument: that the failure to adjust COI rates as future mortality expectations

---

[1] *See, e.g.*, *Vogt*, 963 F.3d at 764-65; *Karr*, 702 S.W.3d at 27-30.

improved breached the contractual requirement that COI be 'based on' future mortality expectations." SPA-15.

Next, while Susman had not specifically raised Lincoln's challenge to Glover's privity as one against class certification, the court considered whether it defeated her adequacy or typicality and found that it did not because (1) lack of privity would not necessarily eliminate Lincoln's potential liability given it was the party engaging in the challenged conduct, and (2) regardless, "Glover is in the same boat as other class members who have policies administered but not issued by Lincoln," demonstrating, rather than refuting, her typicality and adequacy. SPA-15-16. The court thus found it would likely be able to certify the Class. SPA-16.

The court next found the settlement evaluation factors in Rule 23(e)(2) and *Grinnell* were satisfied. The court first rejected Susman's accusation that the Settlement was the result of a collusive reverse auction between Class Counsel and Defendants for several reasons: the negotiations included the participation of an experienced mediator; this case had been filed years before Susman's cases and had been hard fought; Class Counsel have ample experience litigating similar claims; and the Settlement does not provide for a reversion to Defendants. SPA-18-19. The court further found that the addition of Warehime at the time of settlement was not evidence of collusion because (1) "it is not uncommon for defendants to consent to an amended complaint to facilitate a settlement," and (2) the parties had not used an

17

amended complaint to expand the Class. SPA-19. Accordingly, the court found "the proposed settlement is procedurally fair." *Id.*

The court also found the Settlement substantively fair. The court recognized there was "significant uncertainty" regarding the meaning of the policy language and how courts and juries would apply it to the facts. SPA-19-20. "Further, decisions by district courts within the Second Circuit, including mine, do not make it easy for the proposed class members to prevail," and under the Settlement, twenty-two *Vida* class members who had summary judgment granted against them in that case will receive settlement relief as Class Members here. SPA-20.

The court also concluded that the Settlement "treats class members equitably relative to each other" even though there was a statute of limitations challenge applicable to deductions made prior to May 2010, because all Class Members faced "the shared, and likely substantial, challenge that lies at the core of their case, i.e[.], showing that future mortality expectations were not a 'main or significant ingredient' in the COI for years when it comprised more than 50 percent of the COI by value." SPA-21-22. The court also found that "[t]he same principle applies to class members who are in undisputed privity with the defendants and class members who are not." SPA-21.

The court thus granted preliminary approval of the Settlement and approved the issuance of notice to the Class. SPA-22. The notice advised Class Members who

18

were also class members in Susman's cases of the pendency of those cases and that they must opt out of this Class to continue to pursue the claims in those cases. A-1326.

### B. The court denies Susman's demand for broad discovery, finding its allegations of collusion unsupported and implausible.

Nearly three weeks after the court issued its preliminary approval order, Susman renewed its demand for broad discovery. SPA-45-47. The court denied the request, finding the information sought would not help the court evaluate the Settlement, particularly where Susman "already ha[s] a great deal of information about this case and the related cases," which it presented and the court considered at preliminary approval. SPA-32-34. The court found the requested discovery appeared more geared toward challenging the merits of Plaintiffs' claims and did not go to whether Plaintiffs have class standing to assert them or whether the Settlement is procedurally and substantively fair. SPA-34-36.

The court also found that Susman "ha[d] offered zero evidence" that the Settlement "was 'collusive'" or the result of a "'reverse auction,'" finding the accusation "to be implausible" because the negotiations involved a retired federal judge as mediator, and given the substantial experience of Class Counsel; the overall compensation the Settlement achieved; Susman's "somewhat exaggerated assessment of their own chances of success"; and the "legal uncertainty

19

surrounding" the policy language, which posed "substantial obstacles" to "all class members" in each case. SPA-35-36.

### C. The Settlement is well-received by the Class, with Susman's clients submitting the only substantive objections.

The Settlement received overwhelming support from the Class. Only twenty-two policyowners opted out, but not Susman's clients. Instead of opting out to pursue their own claims, the three plaintiffs who opposed preliminary approval and eleven additional Susman clients objected, and they were the only ones. A-1458; A-1872; A-1922; A-40 (Doc. 350).[2] Some Objectors are not even class members in Susman's narrower classes, so they have no chance of benefiting from those cases even if Objectors' appeal is successful. A-2010.

The objections largely repeated the challenges to preliminary approval. A-1466. Objectors mostly just attempted to disprove Glover's allegation that she is in contractual privity with Lincoln. A-1473-75. They also attempted to refute that Lincoln was exclusively responsible for the COI deductions, without explaining why that would prevent approval of a settlement with Lincoln. A-1476-84.

Despite opposing the Settlement, and without notifying the Class that it planned to do so, Susman moved for attorneys' fees of over $24.5 million, expense

---

[2] One additional objection was submitted that simply adopted Susman's prior arguments. A-38 (Doc. 324).

reimbursement of over $2.5 million, and $50,000 service awards for the plaintiffs in its cases, to be paid from the Settlement Fund. A-1406-36.

### D.       The court grants final approval.

After another lengthy hearing, A-2483-2603, on June 16, 2025, the court issued a detailed ruling certifying the Class and approving the Settlement. SPA-60.

First, the court again rejected Objectors' class standing challenge, finding Lincoln administered all the policies and "engaged in the conduct that all of the plaintiffs claim is in violation of the relevant contracts." SPA-62-64. Therefore, the same conduct by Lincoln that caused Plaintiffs' harm "implicates the same set of concerns as [Lincoln's] conduct alleged to have caused injury to all other [class] members[.]" SPA-65.

The court rejected Objectors' argument that Plaintiffs had to prove their own, or Class Members', contractual privity with Lincoln to have class standing. SPA-64-67. Rather, the question was whether Lincoln allegedly injured Plaintiffs the same way it injured the Class Members such that "the proof the named plaintiff develops for his or her individual claims also tends to prove the class claims." SPA-65 (quotations omitted). That test was satisfied because "[t]he proof that the Plaintiffs would develop for their claims—that the COI rate did not decrease when EFME was improving—would thus tend to prove the Class claims regardless of who issued the policy." *Id.* It would be Lincoln's conduct—"not that of LLANY, FPP, or even

21

Connecticut General—that would dominate the trial." *Id.* Further, the court concluded that even if the original issuers also retained liability, that did not displace Plaintiffs' class standing to sue Lincoln for Lincoln's conduct. SPA-66.

Next, the court found the class certification requirements were satisfied. Objectors nominally challenged commonality, typicality, adequacy of representation, and predominance but did not "distinguish these grounds in their arguments," so the court likewise addressed Objectors' challenges collectively, stating "that the core inquiry," as Objectors framed it, was "whether the named plaintiffs ... possess the same interests and suffer the same injuries as the class members." SPA-68 & n.5 (quotations omitted).

The court rejected Objectors' challenge to Glover's privity with Lincoln as a basis to deny certification because "Glover is in the same boat as other class members who have policies administered but not issued by Lincoln." SPA-69. Thus, because resolution of the privity question did not defeat the certification requirements, the court concluded it need not resolve the merits of that challenge, further noting that doing so would "defeat the purpose of settlement," which is to "'avoid the trial of sharply disputed issues and to dispense with wasteful litigation.'" *Id.* & n.6 (quoting *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).

Therefore, because "the same conduct and the same material policy language are at issue for all claims," and "Glover, whose policy was issued by Connecticut

22

General, has the same interest and suffered the same injury as any owner whose policy was administered by Lincoln National, including those issued by Lincoln National (such as Warehime), or LLANY and FPP," the "commonality, typicality, adequacy, and predominance elements are met." SPA-70. The court therefore certified the Class. *Id.*

Finally, the court again found the Settlement "fair, reasonable, and adequate—both procedurally and substantively." SPA-70. First, the court rejected (for the third time) Objectors' contention that the claims in Susman's cases were stronger than the claims in this case. That Susman had promoted extremely high damages calculations using a "unique damages methodology" did not show it was likely to obtain that recovery nor refute that "Class Counsel's calculations are fair, reasonable, and adequate." SPA-73-74.

In Class Counsel's prior cases presented to and accepted by juries, their expert calculated COI overcharges by comparing the COI rates to the expected mortality rates to determine the excess. *See, e.g.*, *Karr*, 702 S.W.3d at 32. Conversely, Susman's experts calculate damages by assuming that the "margin" for non-mortality factors set at pricing must remain the same thereafter, regardless of the proportion of mortality to non-mortality factors. A-2558-60 (76:18-78:4). This "margin maintenance" theory has never been presented to or accepted by a jury.

23

The Settlement produces a significant recovery under the accepted damages theory. For example, the total estimated damages for Class Members with policies originally issued by LLANY was approximately $4 million (A-2563 (81:10-11); A-2582 (100:19-21)). Under the Settlement, the total allocation for those Class Members is $2.2 million, which includes over $400,000 for those Class Members who had summary judgment granted against them in *Vida*. A-1177-78 (¶5).

Second, the court rejected Objectors' challenge to the distribution plan, finding that "[s]implifying the formula and forgoing an extensive damages analysis is a reasonable choice in the interests of expediency, sparing further litigation costs and giving more money to the Class members rather than to experts and lawyers,"[3] and further, that "splitting the Class fund evenly based on COI charges paid is equitable, and it accounts for those Class members who were subjected to COI charges longer than others." SPA-74.

The court also rejected "Objectors' procedural fairness arguments," finding the "evidence demonstrates that Class Counsel had adequate information" to represent the Class, particularly given their "experience in similar matters," which "allow[ed] them to identify expeditiously the most critical documents needed to determine the key facts and thus the advisability of the proposed settlement." SPA-

---

[3] Indeed, Susman had paid its experts over $2 million. A-1446-47. This greatly exceeded the expert costs incurred in this case and Class Counsel's prior COI cases, even those litigated to jury trials. A-1404-05; A-1917 n.8.

75. The court further found that "[t]he information that the Plaintiffs considered at settlement provide[d] sufficient leverage to permit fair settlement negotiations[,]" noting that "if the Objectors' position was taken seriously, no settlement of a COI class action could be approved until exhaustive—and very expensive—discovery was done, including fulsome damages analyses by experts." SPA-75-76.

The court again rejected Objectors' accusation of collusion, SPA-76, as well as their contention that Susman had rejected an offer to settle its cases (before the adverse ruling in *Vida*) that was "twice as good" as the Settlement. SPA-72-74. That claim was "flawed" because it was presented in violation of Federal Rule of Evidence 408, and Lincoln disputed that it had offered that amount to settle Susman's cases. SPA-73. According to Lincoln, that amount was Lincoln's estimate of Susman's "best-case" damages using the "traditional" (*i.e.*, not the untested "margin maintenance") damages methodology. *Id.* Objectors' argument thus compared "apples and oranges": "Figures calculated without considering the risk factors are not comparable to settlement figures that took them into account." SPA-73-74.

The court further found that Lincoln "was not scared into settling with the parties here because of the mere possibility of substantially higher damages" in Susman's cases, particularly where Susman's damages methodology was untested

25

and the damages would be reduced to nearly zero under the governing interpretation of the policies. SPA-83-84.

The court also rejected Objectors' contention that the service awards were conditional on supporting the Settlement, creating a conflict between Plaintiffs and the Class, because (1) the Settlement Agreement does not make the service awards conditional, (2) Susman's plaintiffs are not representatives of the Class, so Class Counsel not seeking service awards for them did not create a conflict, and (3) Class Counsel's decision was "based on their opinion that [those] plaintiffs' opposition to the class settlement outweighed their contributions," which was something "courts commonly weigh." SPA-77-78.

The court thus granted final approval of the Settlement. SPA-78.[4]

---

[4] The court also awarded attorneys' fees of 20% of the Settlement Fund and found that Lincoln's motivation to obtain global peace was sufficient to show Susman's cases had provided a "limited" benefit to the Class. SPA-82, 84, 92. The court therefore awarded Susman 10% of the total fee award but denied its expense reimbursement request. SPA-87-88. The court also awarded the Susman plaintiffs service awards of $10,000 each for their "abstract contributions." SPA-94.

## SUMMARY OF THE ARGUMENT

The district court acted within its broad discretion in certifying the Class for settlement. This case challenged Lincoln's improper determination of the COI rates and inflated deductions from Plaintiffs' and all Class Members' policy accounts. The policies are standardized and contain materially identical COI rates provisions. Lincoln's conduct was uniform as it relates to Plaintiffs' and Class Members' claims.

First, the court correctly found that because it was Lincoln's conduct that allegedly harmed Plaintiffs and all Class Members in the same way, Plaintiffs have class standing to pursue their claims against Lincoln on behalf of the Class.

Second, the court correctly found the class certification requirements were satisfied: given the standardized policy language and Lincoln's uniform conduct, Plaintiffs' claims are typical of the Class Members' claims, and the questions of policy meaning and whether Lincoln's conduct complied with the policies are common and predominated over individualized questions. The court was right to find these requirements satisfied regardless of Lincoln's challenge to Glover's contractual privity, because privity was a merits challenge that applied to Glover and all Class Members who, like her, did not have a policy originally issued by Lincoln. Even though Lincoln's privity challenge did not apply to Class Members with a Lincoln-issued policy, predominance does not require every issue to be common. And the privity issue does not defeat the predominance of the central issues,

27

particularly where certification was sought for settlement, such that any difficulties with managing the adjudication of individualized issues at trial are irrelevant. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012).

Predominance is satisfied for settlement certification because Plaintiffs and all Class Members claim injury from Lincoln's uniform conduct, which caused a common form of harm. *See id.* All claims "share a common nucleus of operative fact, supplying the necessary cohesion." *Id.* Objectors' reliance on *Mazzei*—a case they did not even cite below—in which a litigation class was decertified after a jury trial for a failure of class-wide proof of contractual privity, is therefore misplaced. The district court correctly concluded it need not, and therefore should not, resolve the merits of Lincoln's challenge to privity to find the class certification requirements satisfied. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The court also correctly concluded there was no fundamental class conflict preventing certification on the basis that Glover's and some Class Members' policies were not originally issued by Lincoln, while other Class Members' policies were. Plaintiffs sought the same remedy for themselves and all Class Members—recovery of Lincoln's overcharges. Even if Glover and other Class Members who did not have a policy originally issued by Lincoln would have needed to additionally prove privity with Lincoln, doing so would not refute proof of the other Class Members' claims,

28

and therefore did not create a fundamental conflict. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 259 (2d Cir. 2011) (Straub, J., concurring in part).

The district court also correctly rejected Objectors' contention that Susman's cases were stronger, which Objectors do not challenge on appeal. Accordingly, Objectors' contention that subclassing or greater settlement allocations to them is required because Susman's cases were stronger depends on ignoring the court's contrary finding. Likewise, Objectors' continued assertion that the Settlement was the result of a reverse auction is similarly groundless where the court found every sign of a reverse auction lacking and Objectors do not challenge those findings. The court also correctly found Warehime adequate despite his entrance into the case at the time of settlement, but regardless, the Class was adequately represented by Glover.

Objectors' claim that the service awards were conditional on supporting the Settlement is also demonstrably false: the Settlement Agreement does not make them conditional. And Objectors' claim that the Agreement's non-disparagement provision supports their objection to the service awards is unpreserved and wrong.

Because the district court did not abuse its discretion in certifying the Class, this Court should affirm.

29

## STANDARD OF REVIEW

This Court reviews class certification for abuse of discretion, *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022), "mean[ing] that the district court is empowered to make a decision -- of *its* choosing -- that falls within a range of permissible decisions, and [this Court] will only find abuse when the district court's decision rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 512 (2d Cir. 2020) (emphasis in original; quotations omitted). That is because the trial court is "best-situated to evaluate class issues." *Mazzei*, 829 F.3d at 269-70. Moreover, the Court "accord[s] greater deference to district court decisions granting class certification than to decisions declining to certify a class." *Barrows v. Becerra*, 24 F.4th 116, 130 (2d Cir. 2022) (quotations omitted).

Class standing is reviewed de novo. *See NECA*, 693 F.3d at 158-162.

## ARGUMENT

Objectors do not appeal the district court's approval of the Settlement as fair, reasonable, and adequate. Objectors only challenge class certification. Below, Objectors' arguments did "not distinguish" among the Rule 23(a) and (b)(3) elements. SPA-68 & n.5. They argued the certification elements merged into a single inquiry: do "the named plaintiffs ... possess the same interests and suffer the same

30

injuries as the class members"? A-1472; SPA-68 & n.5. The district court answered "yes," because Plaintiffs and all Class Members have materially identical policies and Lincoln's allegedly improper conduct was uniform, causing the same injury of overcharges to Plaintiffs' and Class Members' accounts. The question on appeal is whether the district court's finding falls within a range of permissible decisions so that the undisputedly fair, reasonable, and adequate Settlement can be distributed to the Class.

## I.    The District Court Correctly Concluded Plaintiffs Have Class Standing.

Objectors improperly conflate their challenges to class certification and class standing and the district court's separate analyses of these issues. Objector-Br.34-38. Class standing is distinct from the Rule 23 requirements. *NECA*, 693 F.3d at 158 n.9.

In evaluating class standing, the district court set forth the correct test: (1) did Plaintiffs personally suffer some actual injury as a result of the putatively illegal conduct of Defendant Lincoln, and (2) does such conduct implicate the same set of concerns as the conduct alleged to have caused injury to the other Class Members by the same defendant, Lincoln. *See* SPA-63 (citing *NECA*, 693 F.3d at 162). The court correctly found the test satisfied because Lincoln's conduct in using COI rates inflated with non-mortality factors and failing to lower those rates despite expected mortality improvement resulted in Lincoln taking allegedly excessive deductions

31

from Plaintiffs' accounts, and Lincoln engaged in the same conduct with the same results as to all Class Members.

Plaintiffs have the same incentives as any other Class Member: to succeed, they had to prove Lincoln's administration of the policies violated the standardized contracts resulting in Lincoln taking excessive deductions from their accounts. The district court correctly found the proof would be substantially the same as to whether the COI rates applied by Lincoln complied with the policies. Therefore, "proving [Lincoln]'s misconduct as to certain claims would tend to prove its misconduct as to the other claims." *Sullivan v. UBS AG*, 149 F.4th 206, 225 (2d Cir. 2025) (quotations omitted). Indeed, that the proof would be the same for all Class Members is established by the evidence in Susman's own cases, in which it relied on evidence of *Lincoln's* conduct regardless of the originally issuing insurer (SPA-7 n.1) and sought to certify a combined class in its cases against Lincoln and FPP.

The facts here are more analogous to *NECA* than *Retirement Board*. In *NECA*, the plaintiffs had class standing to represent class members who had purchased stock through multiple offerings that the plaintiffs had not themselves invested in because the same alleged misrepresentation was made across the multiple offerings. *NECA*, 693 F.3d at 162-64. The claims did not present a "fundamentally different set of concerns" among the class members where the "source of the injury" was the same misrepresentation, even though the location of the misrepresentation was different

32

for different members. *Id.* at 162-64. Conversely, in *Retirement Board*, the plaintiffs did not have class standing to assert claims on behalf of investors in hundreds of trusts different from the ones plaintiffs had invested in because whether the defendant-trustee breached its duties vis-à-vis a given trust "require[d] examining its conduct with respect to each trust" under different circumstances. 775 F.3d at 162. Here, like *NECA*, the policies all contain the same promise about how the COI rates must be determined, and unlike *Retirement Board*, Lincoln's allegedly improper conduct was uniform for all policies.

Objectors' contention that there are issues for which differing proof would be required would not defeat class standing even if true. "*NECA–IBEW* and *Retirement Board* do not require every single element of a claim to be provable on a class-wide basis." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 158 (S.D.N.Y. 2017). Objectors argue that Plaintiffs have no incentive to prove privity between Lincoln and FPP- or LLANY-issued policyowners, but that is wrong. Lincoln challenged Glover's privity because Lincoln did not originally issue Glover's policy, so Glover had an incentive to prove that Lincoln is contractually liable to her and other policyowners who also do not have a Lincoln-issued policy. The privity evidence need not be identical for Glover to have class standing to pursue claims against Lincoln for Lincoln's conduct.

33

The district court's statement that privity would not be a contested issue at trial, while perhaps an overstatement given Lincoln's privity defense, was made in the context of its correct conclusion that "[t]he focus of the proof at trial" would not be on privity, but "would, instead, be on who determined the COI rate, and how[,]" and that "[i]t would be Lincoln National's alleged conduct—not that of LLANY, FPP, or even Connecticut General—that would dominate the trial." SPA-65. The district court did not pre-judge privity, so Objectors' contention that the court must have meant that Class Members with policies not issued by Lincoln would lose their case before trial is false. Objector-Br.36. It also reveals Objectors' confusion, as "class standing is a separate question from the merits of a plaintiff's claim." *Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of Am., NA*, 2014 WL 2086426, at *2 (S.D.N.Y. May 5, 2014). The district court correctly concluded that "evidence of privity is not required to demonstrate class standing" where Lincoln's conduct injured Plaintiffs and all Class Members alike. SPA-64-65.

Objectors' contention that Class Members suffered different injuries because the issuing companies are different is also incorrect. The alleged injuries are the same: excessive account deductions, which Lincoln caused. Regardless, even "non-identical injuries of the same general character can support standing." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018); *see also Sullivan*, 149 F.4th at 225 (holding plaintiffs, who were not holders of forward-rate

34

agreements, had class standing to represent agreement-holders for claims of improper Euribor-rate manipulation because the alleged misconduct was the same even if the injuries were not identical).

The district court made a factual finding that it was Lincoln that performed the conduct that allegedly violated the policies. SPA-9, 69. Objectors do not attempt to show this finding was "clearly erroneous." *Scott*, 954 F.3d at 512. Instead, Objectors make the merits-based, and circular, argument that because Lincoln was purportedly not the contractual-counterparty, it did not legally cause the injury. Objector-Br.40-41. The district court correctly rejected Objectors' faulty reasoning. SPA-66-67. Lincoln took the excessive deductions. Whether Lincoln is contractually liable for doing so was one of the merits questions in the case, the answer to which does not demonstrate, nor refute, Plaintiffs' class standing to challenge Lincoln's conduct. *Cf. SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211-12 (2d Cir. 2020) (holding that a challenge to a party's right to enforce a contract is a merits challenge that does not refute their standing to sue for breach).

Objectors are also wrong in contending the district court "ignored" their evidence attempting to show that Lincoln was not contractually responsible for determining the COI rates. Objector-Br.40. The court considered that evidence and concluded that, the language of the agreement between Lincoln and Connecticut General aside, "Objectors do not contend that Connecticut General did anything

other than rely on Lincoln National to do the underlying work of determining rates[,]" and "[t]he same observation applies to LLANY and FPP." SPA-66 n.3.

Similarly, the district court correctly concluded that whether Lincoln was the administrator for every COI deduction did not refute Plaintiffs' class standing to pursue claims against Lincoln for Lincoln's conduct. *See* Objector-Br.41; SPA-66. While this might be relevant to the amount of damages Lincoln caused, that is a "secondary inquiry" that does not refute that Plaintiffs' claims against Lincoln raise the same set of concerns for all Class Members. *See Leber*, 323 F.R.D. at 158.

Objectors also suggest that Plaintiffs do not have *class* standing for their claims against Lincoln because they would not have *individual* standing to sue FPP and LLANY. Objector-Br.33-34. But Plaintiffs do not allege FPP or LLANY injured them, and they did not sue those companies, so Plaintiffs' individual standing to sue FPP or LLANY is not at issue. Plaintiffs sued Lincoln for injuries Lincoln caused them, and Objectors do not contest that Plaintiffs have individual standing to sue Lincoln.

Further, Objectors are conflating two distinct concepts. *See NECA*, 693 F.3d at 158. In every class action, the plaintiff seeks to recover for injuries suffered by others, and the plaintiff would not have individual standing to sue for those injuries. The class standing analysis is different than the individual standing analysis because class actions "are an exception to the general rule that one person cannot litigate

36

injuries on behalf of another." *Langan*, 897 F.3d at 93. Plaintiffs have class standing to sue Lincoln to recover its overcharges because Lincoln's conduct harmed them and every Class Member in the same way. Conversely, in *Mahon v. Ticor Title Insurance Co.*, 683 F.3d 59 (2d Cir. 2012), cited by Objectors, the plaintiff did not have *individual* standing to sue certain defendants "because she d[id] not allege that they injured her." *Id.* at 60. The district court correctly concluded *Mahon* has no bearing on Plaintiffs' class standing to assert claims against Lincoln for harm caused by Lincoln, regardless of which insurer originally issued a given policy. SPA-8.

## II.   The District Court Correctly Found the Certification Requirements Satisfied.

Objectors' challenges to typicality, predominance, and adequacy hinge almost entirely on their own self-serving assessment of the merits of Plaintiffs' claim that Lincoln is contractually liable, imposing themselves as judges of the privity between Glover—and Class Members with FPP- or LLANY-issued policies—and Lincoln. But the district court correctly concluded that the certification requirements were satisfied regardless of how privity would have been resolved, so Objectors' attempt to disprove privity fails to refute that the court properly certified the Class for settlement.

### A.   The district court correctly found typicality satisfied.

Typicality requires that "'each class member's claim arise[] from the same course of events and each class member make[] similar legal arguments to prove the

defendant's liability.'" SPA-11 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). The district court correctly found Plaintiffs' claims typical of the Class because they alleged Lincoln violated Plaintiffs' and all Class Members' policies and "[a] preponderance of the evidence" showed Lincoln's conduct relevant to the claims was uniform. SPA-69. And, while Class Members with a policy not originally issued by Lincoln would have to prove Lincoln is contractually liable to them, the district court correctly recognized that "Glover is in the same boat." *Id.*

For this reason, Objectors' heavy (and newfound) reliance on *Mazzei* is misplaced. There, the plaintiff sued a mortgage loan servicer and lender, Money Store, for breach of loan contracts. 829 F.3d at 264. The court certified a class of borrowers whose loans were owned or serviced by Money Store. *Id.* at 265. At trial, the jury returned a verdict in favor of the class, including on the issue of whether Money Store was in privity with respect to the loans it only serviced. *Id.* Money Store then filed motions for decertification and for judgment as a matter of law on the basis that the class-wide evidence was insufficient to show privity. *Id.* The district court agreed with Money Store and decertified the class due to the failure of class-wide privity evidence. *Id.* at 270-71.

Owing to the district court's broad discretion to determine if class certification is appropriate, this Court affirmed. *Id*. at 271. It agreed the evidence was insufficient

38

to support the verdict because the only witness who provided testimony going to privity "conceded that he was 'expressing no opinion whatsoever on the defendants in this case'" and discussed only Mazzei's loan documents. *Id.* And Mazzei, as someone undisputedly in privity with Money Store, was not typical of class members for whom privity was challenged because, while privity was "central to the claims of those class members," Mazzei had no need to prove privity for his individual claim, which "may be one reason for Mazzei's failure to introduce sufficient evidence on their behalf." *Id.* at 272. This caused "a misalignment of interests" between Mazzei and the class members for whom privity was disputed. *Id.*

The same is not true here. Lincoln did not originally issue Glover's policy, and it *did* challenge Glover's privity, so Glover needed to prove Lincoln's contractual liability to prevail on her contract claims. Glover's interests are therefore directly aligned with the Class Members who likewise have a policy that was not originally issued by Lincoln in proving Lincoln is contractually liable to them.

Objectors' contention that it was "undisputed" that there are Class Members who lack a contractual relationship with either Defendant is false. Objector-Br.27-28. While there was no dispute about which company issued each policy, Plaintiffs allege Lincoln is liable for breaching all Class Members' policies. Objectors' attempt to refute the *merits* of Plaintiffs' claims does not defeat the *typicality* of those claims. "An analysis into the legal viability of asserted claims" is not "part of a Rule 23

39

certification process." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011) (en banc). Objectors thus "mistakenly place[] the cart before the horse" in arguing the district court should have "establish[ed] the validity of the disputed elements of the asserted claims"—here, privity with Lincoln—"prior to certifying the class." *Id.* at 308.

The district court did not abuse its discretion in finding typicality satisfied.

## B. The district court correctly found predominance satisfied.

The district court found the common questions of policy meaning and breach predominated because "the same conduct" by Lincoln and "the same material policy language are at issue for all claims." SPA-10, 70. Objectors challenge predominance by again relying exclusively on *Mazzei*, but it is again inapposite.

In *Mazzei*, the Court agreed that privity was an individualized issue because "the fact-finder would have to look at every class member's loan documents to determine who did and who did not have a valid claim." 829 F.3d at 272. The Court concluded that it was "within the range of permissible decisions" for the district court to find that the common question of breach did not predominate over the individualized question of privity. *Id.* at 273. *Mazzei* does not justify reversal here.

As an initial matter, Objectors do not dispute that policy meaning and whether the COI rates complied are common questions.[5] Objectors challenge only the court's qualitative analysis finding that those questions predominated over the privity question. But as *Mazzei* recognizes, the district court has discretion in its evaluation of the relationship between common and individual questions. *Id.* at 272-73. Thus, even if privity was an "important matter[]" that could not be proven with common evidence, the central and common questions of policy meaning and breach "can [still] be said to predominate." *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016). *Mazzei's* deference to another court's contrary conclusion—on different facts—does not demonstrate the district court abused its discretion in finding the questions of policy meaning and breach predominated.

Further, unlike in *Mazzei*, proving Lincoln's contract liability here would not require the factfinder to review each Class Member's policy documents. There is no dispute about which company originally issued each policy. Lincoln's contractual liability would have been evaluated by reviewing the documents between Lincoln and the issuing companies to determine whether Lincoln had assumed the

---

[5] While not challenging commonality, Objectors hypothesize that if a supposed lack-of-privity sufficed, then the Class could include anyone that lacks privity with Lincoln. Objector-Br.38. That is a strawman. First, Objectors' argument depends on the false premise that privity had already been resolved against any Class Member when it had not. Second, a policy must have been issued or administered by Lincoln to qualify for class membership, so there is no potential for the boundless class Objectors imagine.

41

contractual obligations, along with Lincoln's uniform conduct in performing those duties. *See* SPA-69-70 n.7. That would have been manageable even if the case had gone to trial. And contrary to Objectors' absolutist assertion otherwise, predominance is not defeated as a matter of law because privity is challenged. *E.g.*, *In re Nigeria Charter Flights Cont. Litig.*, 233 F.R.D. 297, 304 (E.D.N.Y. 2006); *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 193-94 (W.D. Pa. 2006).

But that leads to the more fundamental reason *Mazzei* is inapposite. *Mazzei* evaluated predominance for a class certified for litigation. But "[i]n the context of a settlement class, concerns about whether individual issues would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'" *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Objectors' exclusive reliance on *Mazzei* fails to recognize that "the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis." *Id.* at 242; *Sullivan*, 667 F.3d at 303 (noting that objectors' exclusive reliance "upon cases implicating the manageability obstacles inherent in class litigation … conflate[s] the predicate predominance analysis for certification of a settlement class with that required for certification of a litigation class").

42

In *In re American International Group, Inc. Securities Litigation*, for example, this Court concluded the district court abused its discretion in refusing to certify a securities-fraud settlement class on the basis that the plaintiffs would not have been able to demonstrate that the fraud-on-the-market presumption applied, which it had concluded was necessary to satisfy predominance. 689 F.3d at 241-42. On appeal, distinguishing a prior case where this Court concluded predominance was defeated because the fraud-on-the-market presumption did not apply, the Court held that prior conclusion was not controlling because that case "involved a litigation class, not a settlement class." *Id.* at 242. Because manageability is part of the predominance analysis, for a settlement class, the manageability concerns created in proving the claims without the presumption dropped out of the predominance analysis and could alter the outcome. *Id.*

So too here. Even if establishing Lincoln's contract-liability on non-Lincoln-issued policies required individualized privity evidence, and even if that would have defeated predominance for certification of a litigation class, that does not refute the district court's finding that the central issues of policy interpretation and breach predominated for settlement certification.

And, given its conclusion that predominance was satisfied despite the privity question, the district court correctly did not decide the merits of that issue. SPA-69. "Merits questions may be considered to the extent—but only to the extent—that they

43

are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "This is especially true in the settlement context where no proof on the merits need be adduced." *Sullivan*, 667 F.3d at 307; *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc) (affirming finding that predominance was satisfied for settlement certification over objectors' challenge that some class members could not establish a necessary element of their claims); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) (same).[6]

What is necessary for certification for settlement is sufficient class cohesion, and "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai*, 926 F.3d at 558. Class cohesion is satisfied when "'the legal or factual questions that qualify each class member's case as a genuine controversy' are sufficiently

---

[6] While the district court did not pre-judge privity, Objectors' accusation that the court did not "evaluate 'the probabilities of ultimate success should the claim be litigated'" is false. Objector-Br.37 (quoting *Saylor*, 456 F.2d at 904). As to certification, the court did so in concluding Plaintiffs' case and Susman's cases faced the same overriding challenges, making Plaintiffs adequate and their claims typical. *See* SPA-13-16. The court also did so and reached the same conclusion in evaluating whether the Settlement should be approved. SPA-17, 19-20. Objectors do not even appeal the latter findings. Nor do Objectors dispute the general proposition recognized by the district court from *Saylor*, that one of the purposes of settling is to avoid a trial on the merits.

similar[.]" *In re Am. Int'l Grp.*, 689 F.3d at 240 (quoting *Amchem*, 521 U.S. at 623). There is sufficient cohesion here because all Class Members "'claim injury that by reason of [Lincoln's] conduct has caused a common and measurable form of economic damage. All claims arise out of the same course of [Lincoln's] conduct; all share a common nucleus of operative fact.'" *Id.* (quoting *Sullivan*, 667 F.3d at 338 (Scirica, J., concurring)) (cleaned up). And for a settlement class, the court need not consider whether "the defendant's rebuttal arguments," like Lincoln's attempt to refute privity, "could demonstrate that individual [issues] would render a trial unmanageable[.]" *See id.* at 242.

Objectors' contention that Glover and some Class Members would have failed to prove Lincoln is contractually liable, even if correct, therefore does not support overturning class certification. "Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)." *Id.* at 243-44. Conversely, "'mandat[ing] that a class include only those alleging 'colorable' claims ... would effectively rule out the ability of a defendant to achieve 'global peace' by obtaining releases from all those who might wish to assert claims, meritorious or not.'" *Id.* at 244 (quoting *Sullivan*, 667 F.3d at 310).

45

Moreover, Lincoln is not just settling contract claims, but all claims arising from the same factual predicate, including, for example, conversion. A-689; A-257; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 108 (2d Cir. 2005). Objectors' myopic focus on challenging certification of Plaintiffs' contract claims is therefore also misplaced because, "'[g]iven the settlement, no one need draw fine lines among [the various] theories of relief.'" *Cf. Sullivan*, 667 F.3d at 315 (quoting *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001)).

Objectors' identification of two additional issues they claim are non-common also fails to refute predominance. Objector-Br.31. Objectors argue that Lincoln was not the administrator for every COI charge, but they do not explain how that defeats predominance for certifying the claims against Lincoln for settlement. While that could go to the damages Lincoln would have been liable for, individualized damages do not defeat predominance (*NECA*, 693 F.3d at 165), and Objectors do not contend that calculating damages would require individualized proof anyway.[7]

The same goes for fraudulent concealment tolling. Even individualized statute of limitations issues that would "undoubtedly arise at trial" do not necessarily defeat predominance, *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002),

---

[7] Further, it was an open question whether Lincoln assumed liability for COI overcharges pre-dating its administrative takeover. For example, under Lincoln's agreement with Connecticut General, it took on 100% of the financial risk associated with the policies. A-522. That Lincoln is willing to pay to settle these claims indicates it has concluded it is potentially liable for them.

and they do not here because there will be no trial. Also, prevailing on that tolling theory goes solely to damages—how far back Class Members would have been entitled to recover, not whether they would have been entitled at all.

The district court acted well within its discretion in finding predominance satisfied.

### C. The district court correctly found adequacy-of-representation satisfied.

Rule 23(a)(4) adequacy requires that the class representatives "have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Literary Works*, 654 F.3d at 249 (quotations omitted). A conflict of interest "must be 'fundamental' to violate Rule 23(a)(4)." *Id.* That occurs "when 'the interests of the class representative can be pursued only at the expense of the interests of all the class members.'" *Id.* at 259 (Straub, J., concurring in part) (quoting Newberg on Class Actions, § 3:26 (4th ed. 2002)).

### 1. There was no divergence of interests.

The district court correctly concluded that "the uncertainty about whether Glover is in privity with Lincoln" did not defeat her adequacy because her claims against Lincoln were the same as the claims of all Class Members, including those who, like Glover, did not have a policy originally issued by Lincoln. SPA-15-16, 69. Because Lincoln administered all the materially identical policies "in the same

47

manner in all essential respects," Plaintiffs and all Class Members shared the same interest in proving Lincoln failed to comply with them. SPA-69-70.

While Glover and Class Members like her with a policy not originally issued by Lincoln would have also needed to establish Lincoln was contractually liable, that does not create a fundamental conflict because doing so would not refute the claims of Class Members with Lincoln-issued policies. *See In re Flag Telecom*, 574 F.3d at 35-37 (finding no fundamental conflict even though class included members with claims under two different securities fraud statutes with potential affirmative defense applicable to one but not the other); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764-65 (2d Cir. 2020) (summary order) (finding "no fundamental conflict" where lead plaintiffs and all class members had the same Exchange Act claim, so "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member[,]" even though some class members also held additional claims) (quotations omitted). The same goes for proof of fraudulent concealment to recover for overcharges prior to the limitations period for all Class Members, which Susman does not even try for.

Conversely, in *Literary Works*, subclassing was required because the settlement resolved three different categories of claims eligible for different types and amounts of damages and remedies under different provisions of the Copyright Act, and the settlement dollars to be allocated to the two "more lucrative" categories

"deplet[ed] the recovery" for the less favored category before impacting the allocation to the other two. 654 F.3d at 246, 252, 254. That is not the case here where all Class Members suffered the same injury—overcharges to their accounts—and sought the same form of compensatory damages—return of the overcharges. And, unlike in *Literary Works*, there is no risk that any group of Class Members will have their settlement benefits reduced to zero because some other group got their benefits first. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1277 (11th Cir. 2021) (distinguishing facts of *Literary Works*).

Objectors do not challenge the district court's reasoning on adequacy. Instead, Objectors *assume* that Glover is *not* in privity with Lincoln to claim she "posed no viable threat" against it. Objector-Br.45. But Glover had just survived Lincoln's pleading challenge to privity when the parties commenced settlement negotiations, so she did pose a threat to Lincoln.

Objectors further contend that Glover posed no threat to FPP or LLANY because she had no contract with them, but that is a red herring. Objector-Br.45-46. The class was certified for claims against Lincoln. Glover's lack of privity with non-parties is irrelevant to her adequacy to represent the Class against Lincoln.[8]

---

[8] Objectors' argument appears to be a back-door challenge to the Settlement's *release* of FPP and LLANY (one it made below but does not renew on appeal (A-1490-91)), but Objectors do not contest that their claims against FPP and LLANY arise out of the same "factual predicate" as Plaintiffs' claims against Lincoln, so those claims are appropriately released. *Wal-Mart*, 396 F.3d at 109.

Objectors next contend that Susman's cases were stronger, so Class Members who are also class members in those cases require separate representation. This argument has multiple flaws.

First, Objectors did not argue below that Rule 23(a)(4)'s adequacy requirement mandated sub-classing on this (or any other) basis. While they made the same arguments in attempting to refute the Settlement's fairness, they do not appeal the district court's thorough analysis finding the Settlement fair. Objectors' "shift[ing] [of their] position on appeal and advanc[ing] arguments available but not pressed below" results in "waiver." *Wal-Mart*, 396 F.3d at 124 n.29.

Second, even if considered, the district court properly rejected their claim that Susman's cases were stronger and that Plaintiffs lacked sufficient discovery to evaluate the claims. SPA-12, 19-21, 34-35, 72-75. Objectors "exaggerated" their "own chances of success" and presented an extremely high valuation of their claims that the court found "unconvincing." SPA-36, 72, 83-84. And Objectors' attempt to show otherwise backfired. They cited documents produced in their cases to show they had developed stronger evidence than Plaintiffs, but the key liability documents they pointed to were the same types of documents Glover obtained years ago and had relied upon in seeking to amend her complaint. SPA-12, 75. The court also found that Class Counsel's substantial experience in similar matters allowed "them to identify expeditiously the most critical documents needed to determine the key facts

50

and thus the advisability of the proposed settlement." SPA-75. Objectors merely ignore—rather than attempt to challenge—these factual findings, which are accorded "[g]reat weight" by this Court. *Grinnell*, 495 F.2d at 454.

Nor do the rulings in Susman's cases show they had developed a stronger hand, much less one so much stronger that it rendered Plaintiffs inadequate. The *Vida* court granted summary judgment against twenty-two class members and adopted the same policy interpretation as the district court below. And that interpretation potentially rendered Vida's "margin maintenance" damages model inadmissible. SPA-83.

Objectors point out that the *Vida* court certified a litigation class (of fewer than 800 members), but that did not exert the "extraordinary leverage" Objectors insist renders Plaintiffs inadequate. Certification of classes challenging COI rate determinations are commonplace. A-675-76; A-1384-86. A class of less than 800 members was neither unusual nor extraordinary. And, as Class Counsel's four class action jury trials and appeals in these types of cases demonstrate, insurers routinely continue to litigate—not settle—following certification. Given the posture of *Vida* following summary judgment, which was issued days after Plaintiffs filed their motion for preliminary approval, it is quite possible Lincoln would *not* have settled those claims after that ruling. Further, the district court acknowledged that *Vida* was closer to trial than this case, but that trial was still at least "a few steps away," giving

51

those plaintiffs no material advantage over Plaintiffs here, a finding Objectors also ignore. SPA-82.

Objectors' continued exaggeration of the strength of Susman's cases is insufficient to show an intra-class conflict. *See Wal-Mart*, 396 F.3d at 109-10 (finding adequacy satisfied for settlement class where objectors, who were plaintiffs in parallel proceedings, did not show divergent interests even though they disagreed about which claims were most valuable and what relief was adequate); *Sullivan*, 667 F.3d at 337 n.7 ("The objectors have not shown that plaintiffs suffering identical economic injuries due to a single course of conduct on the part of the defendant have conflicting interests solely because some class members may have stronger claims depending upon variation in state law.") (Scirica, J., concurring).

Objectors' argument is also off-base because some of the Objectors have policies that are not part of Susman's classes. A-1510; A-2010. In other words, they were part of the putative litigation class (and Settlement Class) in this case, but Susman was not pursuing their claims. Susman does not explain how these Objectors would benefit from allegedly "stronger" cases that do not include them. Nor would it be in their interest to be subclassed so their allocation could be reduced to favor the policyowners Susman included.

Moreover, Objectors' goal of overturning certification would also definitively harm class members in Susman's cases because "the settlement provides relief for

52

twenty-two *Vida Longevity Fund* policyholders who would otherwise receive no compensation" due to the summary judgment ruling in that case. SPA-20. And, under the Settlement, Class Members will receive compensation for all COI overcharges, whereas Susman abandoned claims for overcharges prior to the nominal statute of limitations. *See id.* Notably, despite pursuing claims only within the limitations-period, Susman's prior settlements have *released* all claims accrued since "the beginning of time." A-1069 at n.4; *id.* at nn.2-5. Thus, despite levying claims of conflict at Plaintiffs, Objectors fail to reconcile their own internal conflicts.

Objectors also do not explain how Susman's appointments as class counsel in its cases (on an interim basis in *Iwanski* and *TVPX*) support their request for decertification or subclassing. Objector-Br.50. Susman's uncontested appointments in later-filed, copycat cases have no bearing on Plaintiffs' adequacy. Nor do those appointments refute Class Counsel's adequacy, which Objectors do not even challenge.

### 2. Objectors' accusation of collusion is groundless.

As described above, the district court categorically rejected Objectors' claim that the Settlement was the result of a "reverse auction." It found every indicia of a reverse auction absent, SPA-18-19, and Objectors do not challenge those findings on appeal. Objectors also ignore entirely that the district court rejected Objectors' efforts to show Susman had greater "relative leverage" than Plaintiffs. Objector-

Br.51; SPA-75-76, 83-84. Further, while Objectors complain that the court denied their request for discovery into the parties' settlement negotiations (Objector-Br.17) and other subjects, they do not appeal that ruling either.

Nor do Objectors argue on appeal that the $147.5 million Settlement is unfair, unreasonable, or inadequate. That failure undermines entirely their contention that the Settlement was the product of a reverse auction that resulted in undercompensation of the Class. Indeed, the court rejected Objectors' reverse auction arguments in the context in which Objectors made them—as a challenge to Rule 23(e)(2)'s procedural fairness requirements, including that "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length." SPA-18-19, 76. Without a challenge to those findings, Objectors have no hook on which to hang their reverse-auction arguments on appeal.

Instead, Objectors "point only to competition among lawyers for the same class." *Wayside Church v. Van Buren Cnty.*, 2025 WL 2829601, at *8 (6th Cir. Oct. 6, 2025) (unpub.) (quotations omitted). "But competition alone is not tantamount to collusion." *Id.* If it were, neither this case nor Susman's cases could ever be settled without the other claiming a reverse auction. Courts, therefore, repeatedly reject unsubstantiated claims of collusion under similar circumstances. *See id.* (citing *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1094, 1099-100 (9th Cir.

54

2008); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)).

With no challenge to the findings below, Objectors' reverse-auction arguments are entirely gratuitous and appear geared toward tarnishing the parties and the Settlement rather than establishing an actual basis for reversal. Susman's "remorse" that Plaintiffs and Class Counsel achieved a settlement where it could not "is not a basis upon which to undo a class settlement." *See id.*

### 3. The district court correctly found the distribution plan equitable.

Objectors also challenge adequacy by contending the distribution plan is "inequitable." Objectors raised this argument below as one against the Settlement's fairness, which the district court rejected, finding the distribution plan reasonable, simple, and expedient in determining each Class Member's pro rata share of the Settlement Fund by their total COI charges. SPA-74-75.

Objectors now abandon their challenge to the Settlement's fairness but make the same arguments as a Rule 23(a)(4) adequacy challenge, which they did not make below and therefore have waived on appeal. The district court did not abuse its discretion in finding Rule 23(a)(4) adequacy satisfied over a challenge Objectors did not direct at Plaintiffs' adequacy.

In any event, Objectors' challenges to the distribution plan fail. First, they rely on Susman's untested "margin maintenance" methodology for calculating the

55

overcharges to contend the overcharge percentage varied, so COI charges are not a good proxy for overcharges. But the overcharge percentage had not been resolved, was disputed, and depends on both the governing interpretation of the policies and a factfinder accepting the calculations. An untested damages methodology is not the benchmark for evaluating the fairness of a settlement distribution plan. The goal is not "mathematical precision," but "to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 496 (S.D.N.Y. 2018); SPA-74. The district court acted well within its discretion in finding the distribution plan—which has been approved by other courts on similar claims (A-1934-35; SPA-74)—appropriately accounted for the risks and uncertainties of continued litigation, which Objectors' challenge did not. SPA-73-74.

Second, Objectors fall back to their argument that the claims in Susman's cases were stronger and should be allocated a greater share of the Settlement, but as explained, the district court rejected that premise, a finding Objectors do not challenge.

Third, Objectors contend the distribution plan is inequitable because it does not allocate less for COI charges deducted outside the statute of limitations. But Plaintiffs pled the statute of limitations was tolled, and whether Plaintiffs would have prevailed on their tolling theory remained a live issue at the time of settlement.

Where Susman did not even attempt to recover for pre-limitations overcharges, Objectors' contention that any Class Members are worse off by obtaining settlement benefits for such charges than they would be by abandoning them entirely is illogical. And, because all Class Members, including Plaintiffs, have claims both within and outside the limitations period, no group is being disadvantaged to the benefit of the other. *See In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 20-21 (D.D.C. 2015) ("the concern that any set of absentee class members faces systematic dilution of their claims" is "minimize[d]" when there is no "sharp break" between class members' claims).

Nor does the distribution plan *unfairly* benefit Class Members who held their policies longer. The longer a Class Member held their policy, the more allegedly excessive charges were deducted. SPA-74. This "equal pro rata recovery ensure[s] that all claims [a]re treated similarly, aligning the interests of all class members." *Wayside Church*, 2025 WL 2829601, at *8.

Objectors also contend the declarations of Plaintiffs' expert, Scott Witt, did not demonstrate the distribution plan was appropriate. But Witt explained why the COI charges deducted is a reliable proxy for the overcharges suffered, which Objectors do not address. A-1935, ¶16 (stating that "the percentage of overcharges tend to converge toward a common range of overcharge percentages as policies age"). Rather, they challenge Witt's opinion that the distribution plan is fair. But the

district court stated it had independently found the distribution plan fair without relying on Witt's conclusion. SPA-74 n.12. Accordingly, Objectors' challenge to Witt's opinion is irrelevant.

### 4. The district court correctly found Warehime adequate.

Objectors rely only on speculation to contend that Warehime was not acting in the Class's interests and participated in the case only to obtain a service award. They also cite no authority requiring a proposed representative to submit a declaration to establish his adequacy. And their suggestion that Warehime is presumptively inadequate because he joined the case as a party-plaintiff at the time the Settlement was submitted for approval—even though he assisted Class Counsel during the negotiations (A-1401, ¶71)—has no support. *See Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, at *4 (N.D. Cal. Feb. 7, 2008) ("Courts have found that even class representatives who join litigation after a settlement has been reached can adequately represent the class."). Indeed, courts have approved the substitution of class representatives who oppose a settlement that the court has found to be fair with class representatives who support it. *Heit v. Van Ochten*, 126 F. Supp. 2d 487, 495 (W.D. Mich. 2001).

Objectors do not dispute that Warehime has the same interest in holding Lincoln liable for its overcharges as all Class Members. Moreover, where the Settlement is undisputedly fair, reasonable, and adequate, that is an indication that

Warehime (and Glover) "vigorously represent[ed] the claims of all class members." *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 133 n.39 (3d Cir. 2012).

Regardless, while the district court found good cause to add Warehime (SPA-4), which Objectors do not challenge on appeal, the court's analysis of Glover's adequacy alone demonstrates the Class was adequately represented. SPA-68-70. That (among other things) distinguishes this case from the unpublished memorandum in *Maree v. Castanares*, 2025 WL 2268254 (9th Cir. Aug. 8, 2025), where the court remanded a class settlement for further consideration because the district court relied on the presence of a newly added class representative to find adequacy satisfied but had not addressed concerns it had raised about the original representative. *Id.* at \*4-\*5. Accordingly, Objectors' speculative claims challenging Warehime's adequacy fail to show the court abused its discretion in certifying the Class.

### 5. The court correctly rejected Objectors' argument that the service awards were conditional.

Finally, the district court correctly rejected Objectors' argument that the service awards were conditioned on supporting the Settlement, and that cases like *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013), were inapposite because the Settlement Agreement does not provide for conditional service awards. A-701, ¶8.2; SPA-77. Nor was there evidence that Plaintiffs (or the Susman plaintiffs for that matter) were told they would be entitled to a service award

only if they supported the Settlement. The Settlement was also not conditioned on the court's approval of the service awards. A-701, ¶8.4.

Objectors instead rely solely on the fact that Class Counsel did not seek service awards for the plaintiffs in Susman's cases. But they were not representatives of this Class, so Class Counsel not seeking service awards for them could not create a conflict under *Radcliffe*. And Class Counsel did not seek awards for them because in opposing settlement approval they were acting contrary to the Class's interests so they could continue to pursue risky claims for themselves and just a segment of the Class. As the district court correctly concluded, courts regularly evaluate whether objectors advanced the class's interests, or acted contrary to those interests, in determining whether they are entitled to service awards. SPA-77-78. The court found "Susman's opposition, which is not well-founded, has delayed approval of the settlement to the detriment of the Class." SPA-87. Class Counsel's adequacy is not undermined because they judged those Objectors to be acting to the detriment of the Class in opposing the Settlement. SPA-78.

Objectors seem to recognize their argument falters out of the gate, so they now contend that even though the Agreement did not make the service awards conditional, the Agreement's separate non-disparagement provision (what Objectors call a "gag" provision) does. Objectors did not object on this basis below, so this argument is waived. *See Literary Works*, 654 F.3d at 255 n.8.

60

Regardless, Objectors do not explain how the parties' and counsel's agreement to not disparage the Settlement *after* it had already been executed as a fair resolution of the claims—and subject to their ethical obligations—could have precluded Plaintiffs from "exercising any independent judgment." Objector-Br.57. Plaintiffs only became bound to that promise after they determined the Settlement *was* fair, reasonable, and adequate. Such provisions are commonplace, including in class settlements Susman has executed. *See Glaberson v. Comcast Corp.*, No. 03-CV-06604-JP (E.D. Pa. Oct. 28, 2014), Doc. 608-2 at ECF-pp.29-30, ¶12.15.

Objectors cite no authority for their argument, referencing only a Newberg section discussing conditional service awards while implying the topic was non-disparagement provisions. Objector-Br.58. Objectors' unsupported and unpreserved challenge should be rejected.

## CONCLUSION

The district court acted within its broad discretion in certifying the Class for settlement. This Court should affirm.

61

Dated: January 28, 2026 Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

/s/ *Lindsay Todd Perkins*
Norman E. Siegel
Lindsay Todd Perkins
Ethan M. Lange
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:  816-714-7100
Facsimile:   816-714-7101
siegel@stuevesiegel.com
perkins@stuevesiegel.com
lange@stuevesiegel.com

John J. Schirger
Joseph M. Feierabend
**SCHIRGER FEIERABEND LLC**
6811 Shawnee Mission Pkwy, Ste. 312
Overland Park, KS 66202
Telephone:  816-561-6500
Facsimile:   816-561-6501
Schirger@SFlawyers.com
Feierabend@SFlawyers.com

*Attorneys for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because, as calculated by Microsoft Word, it contains 13,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14-point plain font.


/s/ *Lindsay Todd Perkins*
Lindsay Todd Perkins

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2026, I electronically filed the foregoing Plaintiffs-Appellees' Response Brief with the Clerk of the United States Court of Appeals for the Second Circuit using the ACMS system, which will provide notification of such filing to all who are registered ACMS filers in the case.

/s/ *Lindsay Todd Perkins*
Lindsay Todd Perkins