25-1760
Glover v. Connecticut General Life Insurance Company

# In the
# United States Court of Appeals
## for the Second Circuit

August Term, 2025
No. 25-1760

PAULETTE T. GLOVER, ON BEHALF OF THEMSELVES AND ALL OTHERS
SIMILARLY SITUATED, JOHN T. WAREHIME, ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs-Appellees*,

v.

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, THE LINCOLN
NATIONAL LIFE INSURANCE COMPANY,
*Defendants-Appellees*,

v.

VIDA LONGEVITY FUND LP, (NO. 19-CV-06004-ALD-DCF (S.D.N.Y.)),
TVPX ARS INC., AS SECURITIES INTERMEDIARY FOR CONSOLIDATED
WEALTH MANAGEMENT, LTD., ET AL., (NO. 2:18-CV-02989-RBS
(E.D.PA.)), TIM ROBERTS, FIFTH SEASON OPERATING LP, FS OPERATING
OF HOLDINGS LP, NOLOR CAPITAL LP, RICHARD SINGH, JUDY SINGH,
JONATHAN SWERDLOW, RUTHIE WHITE, JOHN HARKINS, LIFE
RECOVERY FUND LLC, JEAN HECKMAN, DOLORES AYLESWORTH
*Objectors-Appellants*.

On Appeal from a Judgment of the
United States District Court for the District of Connecticut.

––––––––––––––––

ARGUED: MAY 15, 2026
DECIDED: AUGUST 11, 2026

Before: KEARSE, NARDINI, and ROBINSON, *Circuit Judges*.

––––––––––––––––

Plaintiffs, on behalf of themselves and a class of similarly situated life insurance policyholders, brought this suit against Defendants Connecticut General Life Insurance Company and The Lincoln National Life Insurance Company for wrongfully deducting certain charges from their policies. After Plaintiffs and Defendants moved for preliminary settlement approval before the United States District Court for the District of Connecticut (Michael P. Shea, *Chief Judge*), certain members of the proposed settlement class sought to intervene and block settlement approval. Driving this effort was the fact that these objectors were also class members in related class actions pending in Pennsylvania and New York that were to be extinguished by the proposed settlement. The Objectors argued, in relevant part, that a settlement class could not be certified because Plaintiffs, who held life insurance policies issued by Defendants, were not typical of class members who held policies issued by other insurers and who would struggle to prove privity of contract with either Defendant. The district court granted both preliminary and final settlement approval, certified a settlement class under Federal Rule of Civil Procedure 23, and entered judgment. On appeal, the Objectors renew the argument that the proposed settlement class fails to satisfy Federal Rule of Civil Procedure 23's typicality requirements. In light of this Court's decision in *Mazzei v. Money Store*, 829 F.3d 260

2

(2d Cir. 2016), we agree. Accordingly, we REVERSE the district court's order certifying a settlement class, VACATE the judgment in favor of Plaintiffs, and REMAND for further proceedings.

————————————

ZACHARY SAVAGE (Seth D. Ard and Ryan Kirkpatrick, *on the brief*), Susman Godfrey L.L.P., New York, NY; Michael Adamson, Steven G. Sklaver, Susman Godfrey L.L.P., Los Angeles, CA, *for Objectors-Appellants*.

LINDSAY TODD PERKINS (Norman E. Siegel and Ethan M. Lange, *on the brief*), Stueve Siegel Hanson LLP, Kansas City, MO; John J. Schirger and Joseph Feierabend, Schirger Feierabend LLC, Overland Park, KS, *for Plaintiffs-Appellees.*

JOHN F. LASALLE (Alan B. Vickery, Eric J. Brenner, and Andrew Villacastin, *on the brief*), Boies Schiller Flexner LLP, New York, NY; Motty Shulman, Centricity Law PLLC, New York, NY, for *Defendant-Appellee The Lincoln National Life Insurance Company*.

Patrick W. Begos, Wystan M. Ackerman, Robinson & Cole LLP, Hartford, CT, *for Defendant-Appellee Connecticut General Life Insurance Company*.

————————————

WILLIAM J. NARDINI, *Circuit Judge*:

This appeal asks the Court to determine whether named plaintiffs' claims are "typical" for purposes of Federal Rule of Civil Procedure ("FRCP") 23(a)(3) when the plaintiffs face no hurdle to proving privity of contract with the defendants on a breach of contract claim, whereas a substantial portion of the class would struggle to do so. A faithful application of this Court's decision in *Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016), compels us to answer "no."

Defendant The Lincoln National Life Insurance Company ("Lincoln") is a business that—as one might guess from its name—issues and administers life insurance policies. Over time, it has also bought other life insurance companies. And as part of its business model, it often administers the policies that were issued by its now-subsidiaries or affiliates. In recent years, policyholders have brought a flurry of federal class-action lawsuits against Lincoln and related companies, claiming that the companies have wrongfully inflated certain charges (called "cost of insurance" or COI) against the value of their life insurance policies. The theories of liability can vary from defendant to defendant—some claims are brought against the company that issued a policy, while others are brought against the company that administers a policy. And some claims are brought against a single company that, allegedly, is both issuer and administrator for the same policy.

The present case was brought in federal court in Connecticut, and litigation has proceeded there for the last ten years. It began with

a complaint brought in 2016 by Plaintiff-Appellee Pauline Glover, who in 1997 bought a life insurance policy from Defendant Connecticut General Life Insurance Company ("Connecticut General"). According to Glover, in 1998 Connecticut General sold "some or all" of its life insurance business to Lincoln, which has been administering her policy ever since. Joint App'x at 608. In May 2016, Glover sued both Lincoln and Connecticut General, on behalf of herself and a class of similarly situated holders of life insurance policies, over the allegedly excessive deduction of COI charges from her policy's value.

While the Connecticut case wended its way through court, three similar class actions (the "Related Actions") were brought against Lincoln and other related companies (not Connecticut General) in federal courts in Pennsylvania and New York. Like Glover, these plaintiffs complained that their policy issuers had taken inflated COI charges from their life insurance policies.

These four cases proceeded in parallel until March 8, 2024, when Glover and an additional plaintiff who joined her case, John Warehime, reached a settlement agreement ("Agreement") with Lincoln and Connecticut General. The Agreement would settle the claims not only of class members in this suit, but also of those in the Related Actions in Pennsylvania and New York. In effect, the Agreement secured a "global" settlement for claims against Lincoln (as well as various related companies, including Connecticut General). Joint App'x at 702.

Recognizing that the proposed settlement represented a death knell for their cases, two members of the proposed classes and one representative of a certified class in the Related Actions appeared in the present suit and tried to block approval of the settlement and certification of a settlement class. As relevant here, they argued that Glover and Warehime, who held life insurance policies issued by Connecticut General and Lincoln, respectively, were not "typical" of the entire class, which included class members who held policies issued by Lincoln's subsidiary Lincoln Life & Annuity Co. of New York ("Lincoln NY") or affiliate First Penn-Pacific Life Insurance Co. ("First Penn"). The district court disagreed, and granted preliminary and final settlement approval, certified a settlement class under FRCP 23, and entered judgment.

On appeal, a number of plaintiffs from the Related Actions (together, the "Objectors") renew their argument that certification of a settlement class is improper because (among other things) Glover and Warehime are not typical of the class. More specifically, they contend that Glover and Warehime face no hurdle to proving privity of contract with Connecticut General or Lincoln, given that those two named plaintiffs held policies that were directly issued by one or the other of those companies. By contrast, class members who were also part of the classes in the Related Actions, but held policies issued by *other* subsidiaries or affiliates of Lincoln, would struggle to establish privity with Lincoln. We agree with the Objectors' argument in light of this Court's decision in *Mazzei*. Accordingly, we REVERSE the district court's order certifying a settlement class, VACATE the

judgment in favor of Plaintiffs, and REMAND for further proceedings.

## I. Background

### A. Underlying Conduct

Glover purchased a "Flexible Premium Adjustable Life Insurance Policy," dated September 28, 1997, from Connecticut General. Joint App'x at 45. This policy was a contract between Glover (the insured) and Connecticut General (the issuer). The policy provided Glover with a $100,000 death benefit and a separate interest-bearing savings account termed a "cash value," which equaled "the sum of premiums received and interest credited under the policy, less partial surrenders, fees, charges and monthly deductions." *Id.* at 45–46. Policyholders could partially or fully withdraw funds from the cash value or use the account as security for a loan. *See Nitkewicz as Tr. of Joan C. Lupe Fam. Tr. v. Lincoln Life & Annuity Co. of N.Y.*, 49 F.4th 721, 723 (2d Cir. 2022) (describing the same type of policy).

The policy also expressly defined the charges that Connecticut General could deduct from the cash value. One was the "Monthly Deduction," which included the COI. Joint App'x at 69. As the COI increased, so too would the charge that Connecticut General took from the cash value. The policy specified that the COI "will be determined by the Company, *based on its expectations as to future mortality experience*." *Id.* at 75 (emphasis added). This, in Glover's view, meant that Connecticut General could consider *only* this factor when calculating COI.

7

Glover alleged that Connecticut General artificially inflated the COI on her policy in order to improperly deduct greater charges from her cash value. According to Glover, Connecticut General carried out this scheme by improperly considering factors other than future mortality experience—*e.g.*, profit assumptions, investment earnings, expense experience—when determining monthly COI rates, and by failing to update the future mortality experiences metric to reflect longer lifespans.

### B. Pre-Settlement Litigation

Glover brought the present lawsuit on May 27, 2016, asserting claims for breach of contract, conversion, statutory theft, and declaratory judgment against Lincoln and Connecticut General.

Even though Connecticut General was the only counterparty to Glover's life insurance policy, and thus the only entity with which she was in direct contractual privity, her complaint also sought to hold Lincoln liable for the wrongful deduction of inflated COI charges from the cash value of her policy. To do so, Glover's complaint alleged that Lincoln had acquired "some or all of" Connecticut General's life insurance and annuity business in 1998. *Id.* at 45. It also noted that both Defendants, including Lincoln, "administered . . . all aspects of [her] Policy," including by "collecting premiums, and setting, assessing and deducting policy charges," and were "the effective and liable insurers" of her policy. *Id.* at 45–46.

Defendants moved to dismiss Glover's complaint, arguing, in part, that Lincoln was not in privity of contract with Glover, a

required element of a breach of contract claim. Lincoln was not a party to Glover's policy, and Defendants argued that Lincoln's subsequent acquisition of Connecticut General's life insurance business and assumption of administrative duties over Glover's policy did not create privity between Lincoln and Glover. On January 11, 2019, U.S. District Judge Robert N. Chatigny dismissed the case without prejudice, but he did not reference this privity argument in his order. Glover moved to amend her complaint on February 26, 2019.

In May 2023, the case was reassigned to Chief U.S. District Judge Michael P. Shea, who partially granted Glover's motion to amend. The district court rejected Defendants' argument that the proposed amended complaint had not properly alleged that Glover was in privity of contract with Lincoln. It reasoned that the amended complaint sufficiently pled privity by alleging that Lincoln purchased "some or all of" Connecticut General's life insurance business, administered the relevant Connecticut General life insurance policies, and was the "effective and liable insurer" of Glover's policy. *Id.* at 296. On October 10, 2023, Glover filed her Second Amended Complaint. The district court then ordered the parties to begin discovery on two discrete questions: "(1) whether [Lincoln] was in privity with [] Glover, and (2) whether [] Glover's claims are precluded by a statute of limitations or, instead, survive due to the applicability of tolling doctrines." *Id.* at 26. In doing so, the district court remarked that without privity, "Lincoln can't be kept in the case." *Id.* at 580.

### C. Related Actions

While the present action was pending, various named plaintiffs represented by the law firm Susman Godfrey L.L.P. ("Susman") initiated the three Related Actions in other jurisdictions. All of these cases asserted similar breach of contract claims over alleged COI manipulation against Lincoln itself or different Lincoln-affiliated insurers.

Two of the cases were filed in the Eastern District of Pennsylvania. Susman filed the first case against First Penn, an affiliate of Lincoln, for improperly inflating COI charges on its life insurance policies. *Iwanski v. First Penn-Pacific Life Insurance Co.*, No. 18-cv-01573 (RBS) (E.D. Pa.) ("*Iwanski*"). As relevant to this appeal, the proposed class in *Iwanski* covered 18,681 policies issued by First Penn or its predecessors. On July 17, 2018, Susman filed the second case only against Lincoln, on behalf of a class of current and former holders of life insurance policies issued by Lincoln or its predecessors, for also wrongfully deducting inflated COI charges from life insurance policies. *TVPX ARS Inc. v. Lincoln National Life Insurance Co.*, No. 18-cv-02989 (RBS) (E.D. Pa.) ("*TVPX*"). Thereafter, the parties in both *Iwanski* and *TVPX* conducted significant discovery and completed class certification briefing.

The third related case was filed in the Southern District of New York. In that case, filed on June 27, 2019, the plaintiffs asserted a breach of contract claim over COI manipulation against Lincoln NY, a wholly owned subsidiary of Lincoln. *Vida Longevity Fund, LP v.*

10

*Lincoln Life & Annuity Co. of New York*, No. 19-cv-6004 (ALC) (S.D.N.Y.) ("*Vida*"). The *Vida* class covered holders of policies issued by Lincoln NY or its predecessors. The parties in *Vida* completed fact and expert discovery in December 2020 and July 2021, respectively. On March 31, 2022, U.S. District Judge Andrew Carter certified a class of "[a]ll current and former owners of universal life insurance policies issued by [Lincoln NY] . . . that were assessed a cost of insurance charge at any time on or after June 27, 2013." Op. and Order, No. 19-cv-6004 (S.D.N.Y.), Dkt. 121 at 3, 13. However, on March 29, 2024, Judge Carter granted partial summary judgment for Lincoln NY.

In February 2023, defense counsel in all three Related Actions (Boies Schiller Flexner LLP) proposed scheduling a mediation to negotiate a global settlement. Though the parties later agreed on a date for mediation and a mediator, Boies Schiller backed out of the negotiation due to a scheduling issue. The parties were unable to set a new date for mediation.

### D. *Glover* Settlement

On March 8, 2024, Plaintiffs in the present case filed the Third Amended Complaint ("TAC") and moved for preliminary settlement approval. The TAC added Plaintiff Warehime, who had bought a life insurance policy from Lincoln in 1982, and asserted claims for breach of contract and declaratory judgment against both Connecticut General and Lincoln. The Agreement between Plaintiffs and Defendants, which was attached to Plaintiffs' motion for preliminary settlement approval, provided $147.5 million to a settlement class of

11

owners of applicable "life insurance policies, that were active on or after May 27, 2010, and were *issued or administered* by either Defendant, or their predecessors in interest." Joint App'x at 688 (emphasis added). This class definition covered all class members in the Related Actions because their policies were administered by Lincoln.[1] The Agreement also stated that it was intended "to effectuate a global settlement encompassing" the three Related Actions. *Id.* at 702. However, First Penn and Lincoln NY, which were defendants in *Iwanski* and *Vida*, were not parties to the agreement and were not named as defendants in the TAC.

On March 29, 2024, Vida Longevity Fund, LP, TVPX ARS Inc., and Jean Heckman moved to intervene in the Connecticut case and sought to block preliminary settlement approval. On behalf of the three objectors, Susman argued that (among other things) Warehime's addition as a plaintiff was improper because the TAC was filed after the deadline to amend had passed; Glover was not typical of class members who participated in the Related Actions; and Glover—as holder of a policy issued by Connecticut General—lacked standing to represent class members who held policies issued by other insurers (*e.g.*, Lincoln, Lincoln NY, and First Penn).

On September 4, 2024, the district court granted preliminary settlement approval. It concluded that good cause existed to add

---

[1] As part of its duties as administrator of Lincoln NY's and First Penn's life insurance plans, Lincoln provided product development, actuarial product management, customer administrative service, and claims processing. Lincoln also developed the mortality rates used in Lincoln NY's and First Penn's life insurance policies.

12

Warehime as a class representative to facilitate resolution of this action. It also held that Glover and Warehime had standing to represent class members who held policies issued by either Lincoln, Connecticut General, Lincoln NY, or First Penn, because Lincoln administered all of these policies. In addition, the court concluded that the proposed settlement class satisfied the FRCP 23 factors, including typicality. In doing so, the court noted that uncertainty about Glover's privity with Lincoln did not render her an atypical class representative because she might be able to maintain a breach of contract claim even without privity, and because she was "in the same boat as other class members who have policies administered but not issued by Lincoln." *Id.* at 1305–06.

The district court then granted final approval on June 16, 2025. The court concluded that Glover and Warehime had class standing, and specifically rejected the notion that potential difficulties in proving Glover's privity with Lincoln defeated standing. According to the district court, "[t]he focus of the proof at trial would [] be on who determined the COI rate, and how," and privity "would never be a contested issue at trial." *Id.* at 2616. Similarly, the court held that questions over privity did not defeat typicality or adequacy because Lincoln administered all policies included in the settlement class, regardless of which insurer issued the policy.[2]

---

[2] The district court also noted, relying on *Saylor v. Lindsley*, 456 F.2d 896 (2d Cir. 1972), that it ought to avoid any determinations on the merits in assessing certification of a settlement class.

The district court entered judgment on June 18, 2025. The three initial objectors, along with others who objected before final approval, then appealed the district court's orders approving the settlement, including its preliminary and final settlement approval orders and entry of judgment.[3]

## II.    Standard of Review

This Court reviews certification of a settlement class for abuse of discretion. *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022). "A district court abuses its discretion when its decision 'rests on a legal error or clearly erroneous factual finding, or falls outside the range of permissible decisions.'" *Id.* (quoting *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020)). Where a court "certifies for class action settlement only," though, "heightened attention to the justifications for binding the class members" is required. *Berni*, 964 F.3d at 146 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848–49 (1999). *But see Barrows v. Becerra*, 24 F.4th 116, 130 (2d Cir. 2022) ("We accord greater deference to district court decisions granting class certification than to decisions declining to certify a class.") (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).

---

[3] The Objectors before this Court include the three initial district court objectors along with Tim Roberts, Fifth Season Operating LP, FS Operating of Holdings LP, Nolor Capital LP, Richard Singh, Judy Singh, Jonathan Swerdlow, Ruthie White, John Harkins, Life Recovery Fund LLC, and Dolores Aylesworth.

14

## III.     Discussion

Objectors raise several arguments for reversing the district court's certification of the settlement class and entry of judgment. We focus our analysis on one of these bases: Plaintiffs' failure to comply with FRCP 23(a)(3)'s typicality requirement.[4]

Under FRCP 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." In other words, typicality requires a plaintiff to show that "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei*, 829 F.3d at 272 (quoting *Caridad v. Metro–N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)). This requirement "ensure[s] that . . . 'the named plaintiff's claim and the class claims are so interrelated that the interests of the class members

---

[4] There is some "tension in the Supreme Court's caselaw as to whether variation between (1) a named plaintiff's claims and (2) the claims of putative class members is a matter of Article III standing . . . or whether it goes to the propriety of class certification under Rule 23." *Retirement Bd. of the Policeman's Annuity and Ben. Fund of the City of Chicago*, 775 F.3d 154, 160 (2d Cir. 2014) ("*Retirement Board*") (internal quotation marks omitted and alterations accepted); *see also Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018) ("At some point, . . . a named plaintiff's claims can be so different from the claims of . . . putative class members that they present an issue not of the prudence of certifying a class under Rule 23 but of constitutional standing."). In the more recent case of *Mazzei v. Money Store*, on which we rely here, we addressed a closely analogous circumstance through the lens of Rule 23(a). 829 F.3d at 264. Because we deem *Mazzei* determinative, we accordingly do so here. *But see Retirement Board*, 775 F.3d at 160–163 (concluding that analogous variance between proof required to establish putative class plaintiff's claims versus those of other putative class members undercut putative class plaintiff's standing to represent class).

will be fairly and adequately protected in their absence.'" *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

This Court's decision in *Mazzei* is instructive. In *Mazzei*, the named plaintiff prevailed at trial on a breach of contract claim against a mortgage lender for improperly imposing certain post-default fees. *See* 829 F.3d at 264–65. The jury awarded $133.80 to the named plaintiff and $32 million to a class of borrowers whose loans were "owned or serviced by the defendants." *Id.* at 265. The district court subsequently decertified the class, holding that the trial record lacked evidence that the lender was in privity with class members whose loans it serviced (but did not issue), that the named plaintiff was atypical of the class because his loan was issued by the lender, and that common questions did not predominate in light of this privity question. *Mazzei v. Money Store*, 308 F.R.D. 92, 112–13 (S.D.N.Y. 2015). On appeal, we affirmed the district court's decertification order, reasoning that typicality was not met because "[w]hether borrowers whose loans were serviced but not owned by [the defendant] were in fact in privity with [the defendant] is an issue central to the claims of those class members . . . [but] not central to [plaintiff's] individual claim." *Mazzei*, 829 F.3d at 272.

The same conclusion is appropriate here. Because Warehime's policy was issued by Lincoln, he can establish privity of contract with Lincoln by virtue of it being the counterparty to his life insurance contract. By contrast, class members who do not hold Lincoln-issued policies could not prove privity with Lincoln on this basis. Instead,

to win a contract claim against Lincoln, they would need to establish their privity with Lincoln on some different theory—say, that Lincoln's role as policy administrator created a direct contractual relationship with them. Because Warehime would have no reason to take this detour, he is atypical of the class as a whole. This is the exact same concern that this Court found to warrant decertification in *Mazzei*.

Glover, for her part, seeks recovery on a policy that was issued by Connecticut General and administered by Lincoln. Connecticut General, unlike First Penn and Lincoln NY, is a Defendant in this action. Consequently, Glover would have no issue proving privity against at least Connecticut General in this action. But this does nothing to establish her typicality with the entire class. None of the class members in the Related Actions held Connecticut General policies, and so her privity with Connecticut General would not help to establish those other class members' privity with (and hence their breach of contract claims against) any of the Defendants in their cases.

Of course, Glover also alleged claims against Lincoln, as do some of the class members in the Related Actions. It is on this basis— her claim against Lincoln—that she proclaims herself a typical class representative. But as to Lincoln, the precise basis on which Glover would establish privity (and hence a breach of contract claim) remains unclear. Construing the TAC and briefing charitably, there are two possible theories of privity between her and Lincoln: (1) that when Lincoln took on duties of administering her Connecticut General policy, it also entered into privity of contract with her; and (2) that

17

when Lincoln bought out Connecticut General's insurance business, it stepped into the shoes of Connecticut General's privity of contract with her. We conclude that neither theory would make Glover typical of the other class members in the Related Actions, and so we conclude that she was not a proper class representative.

The first theory—that Glover and Lincoln enjoyed privity by virtue of Lincoln administering her policy—would be analogous to the service-based theory of privity at issue in *Mazzei*. 829 F.3d at 270. However, unlike *Mazzei*, Glover (loosely) advances a theory of privity that would also apply to segments of the class: that she is in privity with Lincoln because it administered her policy. But this theory kicks up different factual issues for Glover than for class members who held policies issued by other insurers. Indeed, for Glover to succeed on this theory, she would need to show that the nature of Lincoln's administrative duties over Connecticut General-issued policies created *de facto* privity of contract with her. This is a fact-bound question that turns on the administration agreements between Lincoln and Connecticut General. But this issue is distinct from whether Lincoln's role as administrator of policies issued by other insurers—say, Lincoln NY and First Penn—also placed it in privity with holders of those policies. The latter question would be "central to the claims" of class members who held these policies, but not to Glover's claim. *Mazzei*, 829 F.3d at 272.

To illustrate the point, consider which documents Glover would rely on to show her contractual privity with Lincoln on a policy administration theory. The record contains a January 1, 1998

18

"Administrative Services Agreement," in which Lincoln agreed to administer Connecticut General's outstanding life insurance policies. Joint App'x at 535–55.  This is a Connecticut-General-specific mode of proof, which Glover herself describes as depending on the "the documents between Lincoln and the issuing companies."  Plaintiffs-Appellees' Br. at 41.  The documents that Glover would use to prove her claim against Lincoln would do nothing to help class members who held policies issued by First Penn and Lincoln NY.  Those members would need to present completely different evidence to establish that Lincoln took on comparable duties (and thereby established contractual privity with them) when it agreed to administer their policies.

Indeed, the record reflects that Lincoln's administrative duties with respect to policies issued by Lincoln NY and First Penn were governed by completely different documents.  With respect to Lincoln NY, its administration relationship with Lincoln is outlined in a May 1, 2007 "Master Services Agreement."  Joint App'x at 877–907.  And Lincoln's duties with respect to policies administered by First Penn are outlined in yet another document, a "First Amended and Restated Master Services Agreement," dated April 25, 2013.  *Id.* at 920–48. Neither of these documents would advance Glover's contractual claims against Lincoln, and so she would have no reason to introduce them.  (And even if she did, the latter document would do nothing to establish Lincoln's privity with holders of First Penn policies for nearly three years of the Class Period (May 27, 2010 to April 25, 2013)). In sum, even if Glover pursued an administration-based theory of

19

privity with Lincoln, she would still be atypical because the factual issues central to her success under this theory would markedly differ from those of class members who held policies issued by non-Connecticut General insurers, like First Penn and Lincoln NY.

As to the second theory, Glover seems to suggest that she could establish her privity with Lincoln through its acquisition of a relevant portion of Connecticut General's life insurance business (including, presumably, her own policy). But this theory founders on the same typicality problem. Fundamental to this theory, for Glover, is proving that the terms of Lincoln's acquisition of Connecticut General left it in privity with holders of Connecticut General-issued life insurance policies. This issue has no import, however, for class members who held policies issued by other Lincoln subsidiaries and affiliates, like Lincoln NY and First Penn. Instead, privity for those class members would turn on the specific rights and obligations that Lincoln has over the specific issuer of their policy. The documents underlying these inquiries are again instructive. For Glover to show privity with Lincoln under the acquisition theory, she would have to rely on a "Second Amended and Restated Asset Transfer and Acquisition Agreement," dated July 27, 1997, wherein Lincoln acquired Connecticut General's assets. *Id.* at 417–513. This document says nothing about Lincoln's relationship with First Penn or Lincoln NY. Class members who held policies issued by these insurers would instead need to rely on wholly separate documents that encapsulate Lincoln's rights and obligations over their issuer (which are lacking in the record). Thus, Glover would still not be typical if she sought to

20

establish privity with Lincoln on the notion that it had stepped into the shoes of Connecticut General and basically inherited its privity with her, as this theory implicates issues of fact that do not "occupy essentially the same degree of centrality" for Glover as they do for other members of the class. *Mazzei*, 829 F.3d at 272.

The district court's final certification order did not adequately account for these distinctions. The court concluded that typicality was met, in part, because Glover was "in the same boat as other class members who have policies administered but not issued by Lincoln" and the evidence showed that Lincoln administered policies "in the same manner in all essential respects . . . regardless of the company that issued the policy." Joint App'x at 2620. But for the breach of contract claims presented by this class, the operative question for typicality purposes is not merely how Lincoln administered the policies (say, by calculating COI in a particular way). It also involves whether Lincoln's role as policy administrator placed it into a relationship of privity of contract with the policyholders. Each group of policyholders, depending on which company issued their policies, would have to prove in a completely separate way how they came to be in privity with Lincoln. In short, each issuer's policyholders were in different boats.

For similar reasons, we disagree with Defendants' contention that Plaintiffs are typical on the different metaphorical ground that they have "the same uphill battle" to prove liability as the class. Defendants-Appellees' Br. at 28. Even if Warehime himself established privity with Lincoln because it issued his policy directly,

21

the Objectors whose policies came from other issuers have an additional ridge to climb: establishing privity with Lincoln through its administration of their policies. And although Glover also had to climb the hill of establishing her privity with Lincoln, one way or the other she would have to follow a completely different path than would class members whose policies were issued by different companies.

Finally, privity cannot be disregarded in the typicality inquiry on the ground that, as the district court suggested, it "would never be a contested issue at trial." Joint App'x at 2616. Privity is an essential showing needed to "prove the defendant's liability" on a contract claim, *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)), and so it would almost certainly be a focus at trial. The district court recognized as much earlier in this case when it stated that if Glover couldn't show privity with Lincoln, "Lincoln [couldn't] be kept in the case." Joint App'x at 580. The issue thus cannot be ignored when assessing typicality.

In short, the typicality requirement of FRCP 23(a)(3) was not satisfied in this case, and certification of the settlement class was therefore improper.

## IV. Conclusion

Because Plaintiffs failed to satisfy FRCP 23(a)(3)'s typicality requirement, we REVERSE the district court's order certifying a

22

settlement class, VACATE the judgment in favor of the Plaintiffs, and REMAND for further proceedings.